MERLE, J.

CROSS-GOLDENBERG, M.J.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF NEW YORK**

CV 26- 4861

RECEIVED
AUG 10 2026
PRO SE OFFICE

**Complaint for a Civil Case**

Case No.______________________

JURY TRIAL REQUESTED.

Raj K. Thakur, 79-19 147 Street, Apt. E7, Flushing, NY 11367.

................ Plaintiff.

v.

1. CITY OF NEW YORK
   c/o Corporation Counsel New York City Law Department 100 Church Street New York, NY 10007.

2. NEW YORK CITY POLICE DEPARTMENT
   New York City Police Department One Police Plaza New York, NY 10038.

3. POLICE COMMISSIONER OF THE CITY OF NEW YORK
   Office of the Police Commissioner One Police Plaza, Room 1400 New York, NY 10038.

4. Investigator, Precinct 103, 168-02, 91 Avenue, Jamaica, NY 11432.

REC'D IN PRO SE OFFICE
AUG 10 '26 PM12:32

5. Investigator, Precinct 105, 92-08 222 Street, Queens Village, NY 11428.

6. Individual John/Jane Doe NYPD Officers 1-50, each in their individual and official capacities (officers who refused to write complaints, accident-scene officers who mishandled Plaintiff's complaints over a ten-year period).

7. JOHN/JANE DOE PRIVATE INDIVIDUALS 1–100 (private individuals who tailgated, slowed down intentionally, entered Plaintiff's lane in the wrong direction, crossed stop signs, made sudden U-turns, and harassed Plaintiff on roads and sidewalks, acting in concert with or under direction of government actors);

8. Olamilekan Babatunde Sikiru, 920 Glenmore Avenue 2, Brooklyn, NY 11208.

................. Defendants.

INTRODUCTION

1 Plaintiff Raj Thakur respectfully submits this Complaint to the United States District Court for the Eastern District of New York seeking justice for a decade of coordinated civil rights violations, targeted harassment, unlawful surveillance, deliberate indifference, and an ongoing conspiracy carried out by state actors and private individuals acting in concert, in violation of the United States Constitution and federal civil rights statutes, including but not limited to 42 U.S.C. §§ 1983, 1985, and 1986, and the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

**2.** This is a ten-year civil rights pattern-and-practice case. It is not, and must not be characterized as, a mere automobile accident case. The motor vehicle collision of May 13, 2025, involving an uninsured driver carrying a false insurance

card, is but one episode in a continuous, coordinated campaign of harassment, surveillance, intimidation, and civil rights deprivation that Plaintiff Raj Thakur has endured for approximately ten years at the hands of identified and unidentified Defendants, some acting under color of state law and some acting in concert with or at the direction or encouragement of government actors.

**3.** All claims arising from motor vehicle negligence and all claims under Supplementary Underinsured Motorist ("SUM") coverage against Erie Insurance Company arising from the May 13, 2025 collision will be prosecuted separately in New York State Court, in a separate action. This federal civil rights action concerns the constitutional violations, the pattern of deliberate indifference, the conspiracy between state and private actors, and the systematic denial of Plaintiff's federally protected rights. This Court has jurisdiction over those federal claims.

**4.** Erie Insurance Company may not seek subrogation or reimbursement from Plaintiff in any proceeding arising out of the May 13, 2025 collision or otherwise connected to the facts herein, because Plaintiff's total compensatory and non-compensatory damages—arising from ten years of coordinated harassment, civil rights violations, physical injury, lost earnings, damage to professional reputation, and emotional distress—far exceed any settlement that Erie Insurance Company may reach with the driver or any other party in any state court proceeding.

**5.** For approximately ten years, Plaintiff Raj Thakur—a person of South Asian national origin, a former attorney from India, an LL.M. graduate of Touro Law Center, a licensed New York real estate broker of more than twelve years, and a youth counselor, and nurse aide/DSP —has been subjected to a continuous,

escalating, coordinated pattern of targeting, surveillance, road harassment, sidewalk harassment, defamation, slander, and the systematic refusal of New York City Police Department officers to accept, document, or investigate his repeated and urgent complaints. The constitutional dimensions of this pattern are profound, far-reaching, and well-established under controlling precedent. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978); Monroe v. Pape, 365 U.S. 167 (1961).

**6.** The pattern of targeting and harassment directed at Plaintiff includes, without limitation: (a) systematic road harassment by private individuals who tailgate Plaintiff's vehicle, slow down intentionally ahead of him to impede his travel, enter his lane from the wrong direction, run stop signs in front of or near Plaintiff, and execute sudden U-turns to block, surprise, or menace Plaintiff; (b) harassment of Plaintiff on sidewalks and in public spaces; (c) the dispatch, encouragement, or direction of these private individuals by persons with access to government intelligence resources, law enforcement communications, and knowledge of Plaintiff's daily movements, schedule, and residence; and (d) surveillance of Plaintiff's movements, communications, and activities without lawful authority. See 42 U.S.C. §§ 1983, 1985, 1986.

**7.** The pattern further includes the transmission of defamatory messages to Plaintiff's personal mobile telephone and tons of junk email by wrongdoers, damaging Plaintiff's reputation and causing him severe emotional distress. Additionally, unknown persons have engaged in the systematic slander of Plaintiff to persons who know him personally and professionally, including landlords,

neighbors, acquaintances, and business contacts, causing damage to Plaintiff's professional relationships, business prospects, and personal standing in the community. See Paul v. Davis, 424 U.S. 693 (1976).

**8.** The pattern further includes the Blackberry missed-call incident, a specific occurrence in which Plaintiff received a missed call on a Blackberry device about ten years ago while the plaintiff was asleep during day time. When the plaintiff woke up and saw the miscall which shows itself from "FBI". The plaintiff immediately called the same number (miscalled from FBI) and someone picked up immediately. The plaintiff spoke to the person that he (plaintiff) saw this miscall as he was sleeping at the time of your phone call. The person taking the phone call of the plaintiff spoke "we will catch you whenever we want/need". Then he (phone call taker) immediately hanged up without saying any further words. Actually this was the starting of the stalking and targeting almost about ten years ago. It put the plaintiff under fear and the plaintiff thought that there is something wrong and the plaintiff could be arrested for no reasons whatsoever. It was very scary.

8A. Plaintiff further alleges that, during the ten-year period of harassment described herein, certain law-enforcement personnel and individuals acting in concert with them improperly interfered with Plaintiff's access to medical care and the confidentiality of his medical treatment. Plaintiff experienced incidents in which government actors or persons connected to them attempted to influence, pressure, or communicate with medical providers regarding Plaintiff's treatment, including efforts to obtain or shape medical information in a manner that would undermine Plaintiff's credibility or portray him as mentally unstable. Plaintiff does not allege that any doctor made false findings, but he alleges that the pattern of interference

— including unexplained inquiries, refusal by certain providers to release records, and abrupt changes in provider behavior — deprived him of the security and privacy guaranteed under the Fourteenth Amendment and violated his constitutional right to be free from improper government intrusion into medical decision-making. Such interference, if proven, constitutes unlawful retaliation, invasion of privacy, and deliberate indifference to Plaintiff's rights under 42 U.S.C. § 1983.

**9.** On numerous occasions spanning approximately ten years, Plaintiff presented himself in person to New York City Police Department precincts and called 911 to report the foregoing harassment, targeting, surveillance, threats, and civil rights violations. On every such occasion, NYPD officers refused or failed to prepare a police report, refused or failed to prepare a complaint report, and refused or failed to take any official action. This pattern of consistent, unbroken refusal to serve Plaintiff constitutes a de facto municipal policy, custom, and practice actionable under 42 U.S.C. § 1983 and Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

**10.** Plaintiff, exercising his constitutionally protected right to petition government for redress of grievances under the First Amendment to the United States Constitution, filed formal written complaints with the following authorities: the Queens County District Attorney's Office; the Police Commissioner of the City of New York; the United States Department of Justice, Civil Rights Division; the New York State Attorney General; the Governor of New York State; FBI and other federal, state, and local agencies and oversight bodies. These complaints documented in detail the harassment, surveillance, and civil rights violations Plaintiff was experiencing and sought official intervention and relief.

**11.** Rather than receiving any relief following his complaints to the foregoing authorities, Plaintiff experienced a marked escalation of harassment after each complaint was filed. The pattern is unambiguous: each time Plaintiff engaged in the constitutionally protected activity of filing a complaint with a governmental authority, the intensity and frequency of the harassment directed at him increased. This causal connection between protected activity and retaliatory harm constitutes First Amendment retaliation in violation of the United States Constitution. See Hartman v. Moore, 547 U.S. 250 (2006); Crawford-El v. Britton, 523 U.S. 574 (1998); Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001).

**12.** The fact that harassment systematically intensified following each of Plaintiff's complaint filings is itself powerful evidence of a coordinated retaliatory conspiracy. Such a conspiracy, involving both state actors and private individuals acting in concert with state actors, is actionable under 42 U.S.C. §§ 1985(3) and 1986. See Griffin v. Breckenridge, 403 U.S. 88 (1971); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Dennis v. Sparks, 449 U.S. 24 (1980).

**13.** The NYPD investigators who were assigned to review Plaintiff's formal complaints mishandled the investigations, failed to take appropriate action, failed to collect relevant evidence, and in so doing deprived Plaintiff of his right to meaningful redress and compounded the pattern of deliberate indifference to Plaintiff's constitutional rights. See Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009).

**14.** The totality of the foregoing conduct—ten years of coordinated road harassment, sidewalk harassment, defamation, slander, surveillance, police refusal

to take complaints, investigator mishandling, retaliatory escalation following each complaint, and the suspicious circumstances of the May 13, 2025 collision—constitutes a sustained, systematic assault on Plaintiff's constitutional rights that demands judicial intervention, declaratory relief, injunctive relief, compensatory damages, punitive damages, and attorney's fees. See 42 U.S.C. §§ 1983, 1985, 1986, 1988; U.S. Const. amends. I, IV, V, XIV; Monell, 436 U.S. 658 (1978).

**15.** Plaintiff Raj Thakur files this Complaint pro se, with full knowledge of the legal principles applicable to his claims, with the intention of vindicating his constitutional rights and the rights of all persons in similar circumstances, and with the resolve to pursue this litigation through discovery, trial, and all appellate proceedings as necessary to obtain full and complete justice. Some of the exhibits and complaint copies filed with governmental authorities are incorporated herein by reference and will be produced during discovery.

15A. The plaintiff is appending the following EXHIBITS to the complaint:

1. NYC Comptroller Claim (Exhibit 1)

"Exhibit 1: Plaintiff attaches Claim No. 2025P1020453, dated 06.12.2025, issued by the NYC Comptroller's Office, documenting Plaintiff's formal municipal claim regarding the May 13, 2025 incident."

2. Email + Certified Mail to Queens DA (Exhibit 2)

"Exhibit 2: Plaintiff attaches his email dated 04.08.2025 to the Queens District Attorney, also mailed by certified post on 04.10.2025, reporting unlawful acts by police and warning of potential harm."

3. Certified-Mail Complaint to Police Commissioner, DA, CCRB (Exhibit 3)

"Exhibit 3: Plaintiff attaches his certified-mail letter dated 05.19.2025 to the NYC Police Commissioner, with copies to the Queens DA and CCRB, requesting investigation of the accident, the adverse driver, and NYPD's refusal to prepare an accident report."

4. Multi-Agency Complaint + Enclosures (Exhibit 4)

"Exhibit 4: Plaintiff attaches his certified-mail complaint dated 06.04.2025 sent to multiple government authorities and civil-rights organizations, reporting stalking, harassment, and police inaction, together with supporting enclosures A through K."

5. DOJ / U.S. Attorney Civilian Crime Report (Exhibit 5)

"Exhibit 5: Plaintiff attaches the Civilian Crime Report form sent to him by the U.S. Attorney's Office (SDNY), completed by Plaintiff on 07.26.2025 and returned via certified mail."

6. Texas Department of Insurance Letter (Exhibit 6)

"Exhibit 6: Plaintiff attaches the Texas Department of Insurance letter dated 12.29.2025 (Problem Report ID 437515), confirming that the adverse driver's Loya Insurance policy expired on 06.24.2022 despite the driver presenting an ID card showing active coverage."

7. Queens DA Letter — Insufficient Evidence (Exhibit 7)

"Exhibit 7: Plaintiff attaches the Queens District Attorney's letter dated 11.12.2025 (DITS No. 12250396), stating that the office is not pursuing criminal charges at this time due to insufficient evidence, with review possible if future evidence emerges."

## JURISDICTION AND VENUE

**16.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), which grants United States district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. The claims asserted herein arise under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, all of which are laws of the United States within the meaning of 28 U.S.C. § 1331.

**17.** This Court additionally has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), which grants district courts original jurisdiction over civil actions commenced by any person to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

**18.** This Court additionally has subject matter jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which grants district courts original jurisdiction over civil actions to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights, including the right to vote. The claims herein are brought under Acts of Congress providing for the protection of civil rights within the meaning of that provision.

**19.** Jurisdiction is also proper under 42 U.S.C. § 1983, which creates a private right of action for persons deprived of rights, privileges, or immunities secured by

the Constitution and laws by persons acting under color of state law; under 42 U.S.C. § 1985, which creates a private right of action for conspiracies to deprive persons of civil rights; and under 42 U.S.C. § 1986, which creates liability for knowing failure to prevent such conspiracies. See Monroe v. Pape, 365 U.S. 167 (1961).

**20.** To the extent any claims herein may be asserted against federal officials or persons acting in concert with federal officials, this Court also has jurisdiction pursuant to the implied constitutional cause of action recognized in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), which authorizes suits directly under the United States Constitution against federal actors for constitutional violations.

**21.** This Court has supplemental jurisdiction over Plaintiff's state law claims, including claims for negligence, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress, pursuant to 28 U.S.C. § 1367(a), which grants district courts supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. All of Plaintiff's state law claims arise from the same nucleus of operative facts as his federal claims and form part of the same case or controversy.

**22.** Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because one or more Defendants reside in this judicial district, including Defendant City of New York, which operates and maintains government offices and law enforcement facilities within the

Eastern District of New York, and because Defendant NYPD officers assigned to precincts serving Queens, New York, reside and/or regularly conduct official activities within the Eastern District.

**23.** Venue is independently proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Queens, New York, which is located within the Eastern District of New York. The road harassment, sidewalk harassment, police refusal to take complaints, and the May 13, 2025 collision all occurred within Queens, New York, within the Eastern District of this Court.

**24.** Plaintiff Raj Thakur resides in Queens, New York, within the Eastern District of New York. The bulk of the acts and omissions complained of herein occurred within Queens, New York. The NYPD precincts to which Plaintiff made his repeated, refused complaints are located within Queens, New York. The location of the May 13, 2025 motor vehicle collision is within Queens, New York. Venue in this District is therefore proper and appropriate.

**25.** With respect to administrative exhaustion, Plaintiff has satisfied or is excused from all applicable notice and exhaustion requirements. Plaintiff filed a Notice of Claim against the City of New York pursuant to New York General Municipal Law § 50-e, as required prior to asserting state law tort claims against municipal defendants, and has otherwise complied with applicable pre-filing requirements to the extent required by law. To the extent any notice or exhaustion requirement may not have been met, Plaintiff reserves the right to amend this Complaint and to

assert all applicable tolling doctrines, including equitable tolling based on Defendants' fraudulent concealment of their wrongdoing.

**26.** With respect to the statute of limitations, Plaintiff's claims are timely under the applicable three-year statute of limitations for claims brought under 42 U.S.C. § 1983 in New York. See Owens v. Okure, 488 U.S. 235 (1989) (applying the forum state's general personal injury statute of limitations to § 1983 claims). Moreover, the continuing violations doctrine applies to preserve all claims arising from the ten-year pattern of harassment and civil rights violations, as each act of harassment, each refusal to take a complaint, and each act of retaliation constitutes a fresh violation that renews the limitations period. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

**27.** The doctrine of fraudulent concealment further tolls the statute of limitations with respect to acts and omissions of Defendants that were concealed from Plaintiff. The identities of John/Jane Doe Defendants are currently unknown to Plaintiff and cannot be established without discovery, including subpoenas for 911 records, police complaint logs, NYPD internal affairs records, and communications between NYPD officers and private individuals. Plaintiff reserves the right to amend this Complaint as Doe Defendants are identified through discovery pursuant to Federal Rule of Civil Procedure 15.

**28.** This Court has personal jurisdiction over all Defendants. Defendant City of New York and Defendant NYPD are New York governmental entities conducting substantial activities within the Eastern District of New York. Individual Defendant NYPD officers conducted the acts complained of herein within the Eastern District.

Private Individual Doe Defendants conducted their harassment and other unlawful acts within the Eastern District of New York. The exercise of personal jurisdiction over all Defendants is consistent with due process and the constitutional requirements of the Fifth and Fourteenth Amendments.

---

## PARTIES

### A. Plaintiff

**29.** Plaintiff Raj Thakur is a natural person and a resident of Queens, New York, located within the Eastern District of New York. Plaintiff is a former attorney from India and holds a Master of Laws (LL.M.) degree from Touro Law Center, New York. Plaintiff has been a licensed real estate broker in the State of New York for more than twelve years and is also a youth counselor, nurse aide/DSP. Plaintiff is a person of South Asian national origin and has been subjected to discriminatory treatment on the basis of race, national origin, and color, in violation of federal law. Plaintiff brings this action in his individual capacity as a person whose constitutional and civil rights have been violated.

### B. Defendants

**30.** Defendant THE CITY OF NEW YORK (hereinafter "City") is a municipal corporation duly organized and existing under the laws of the State of New York, with its principal offices located at City Hall, New York, New York. The City is a "person" within the meaning of 42 U.S.C. § 1983 and may be sued thereunder. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978). The City

is responsible for the policies, practices, customs, and training of the New York City Police Department and all of its officers, employees, and agents.

**31.** The City of New York, acting through its authorized policymakers, adopted, implemented, and maintained policies, customs, and practices of ignoring, dismissing, and refusing to process civil rights complaints filed by members of the public, including Plaintiff; of failing to train and supervise NYPD officers to properly receive, document, and investigate civilian harassment complaints; and of allowing, permitting, and acquiescing in a pattern of deliberate indifference to the constitutional rights of persons such as Plaintiff. These policies, customs, and practices directly and proximately caused the constitutional deprivations that Plaintiff suffered. See Monell, 436 U.S. 658 (1978); City of Canton v. Harris, 489 U.S. 378 (1989).

**32.** Defendant THE NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD") is an agency of the City of New York, operating as an arm and instrumentality of the City. While the NYPD has historically been held to lack the capacity to be sued separately from the City under New York law, it is named herein as a defendant to preserve all claims and to ensure that all relevant departmental policies, records, and practices are subject to this Court's jurisdiction. All claims against the NYPD are asserted jointly and severally with claims against the City of New York.

**33.** Defendant POLICE COMMISSIONER OF THE CITY OF NEW YORK is the chief executive officer and final policymaking authority of the New York City Police Department. The Police Commissioner is sued herein in both his/her official capacity and individual capacity. In his/her official capacity, the Police

Commissioner is responsible for the policies, customs, and practices of the NYPD that caused the constitutional violations alleged herein. In his/her individual capacity, the Police Commissioner is responsible for his/her personal knowledge of, acquiescence in, and failure to remedy the pattern of deliberate indifference to Plaintiff's constitutional rights. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) (single decision by policymaker may constitute municipal policy).

**34.** The Police Commissioner, as the final policymaking authority for the NYPD, is personally responsible for the NYPD's failure to train officers to receive and document civilian complaints, for the failure to supervise the investigator who mishandled Plaintiff's complaint, and for the NYPD's de facto policy of refusing to take police reports from Plaintiff on each of the numerous occasions Plaintiff sought police assistance over the span of approximately ten years. See Pembaur, 475 U.S. 469 (1986); City of Canton, 489 U.S. 378 (1989).

**35.** Defendants JOHN/JANE DOE NYPD OFFICERS 1–50 are individual officers of the New York City Police Department whose true names and shield numbers are currently unknown to Plaintiff and who will be identified through discovery, including through FOIL requests for 911 logs, police complaint reports, desk officer logs, and other NYPD records. These officers are sued in their individual and official capacities. They include: (a) the officers who, over a period of approximately ten years, refused to write police reports, refused to prepare complaint reports, and failed to take official action when Plaintiff presented himself to NYPD precincts or called 911 to report harassment, targeting, and civil rights violations; (b) the officers who responded to the scene of the May 13, 2025 motor vehicle collision

and failed to properly investigate and document the incident, including the driver's false insurance card and suspicious circumstances; and (c) the investigators who were assigned to review Plaintiff's formal complaints and who mishandled the investigations.

**36.** At all times relevant herein, the John/Jane Doe NYPD Officers acted under color of state law within the meaning of 42 U.S.C. § 1983. Their conduct was carried out pursuant to their official authority as sworn police officers of the City of New York. Qualified immunity does not protect officers who violate clearly established constitutional rights of which a reasonable person would have known. See Anderson v. Creighton, 483 U.S. 635 (1987). The right of a civilian to have his complaints received and documented by police, and the right not to be subjected to discriminatory denial of police services, were clearly established rights at the time of the violations alleged herein.

**37.** Defendants JOHN/JANE DOE PRIVATE INDIVIDUALS 1–100 are private persons whose true names, addresses, and identities are currently unknown to Plaintiff and who will be identified through discovery. These defendants, acting individually and in concert with one another and with government actors, engaged in a systematic, coordinated pattern of road harassment and sidewalk harassment against Plaintiff over a period of approximately ten years, including but not limited to: tailgating Plaintiff's vehicle; intentionally slowing their vehicles ahead of Plaintiff to impede his travel; entering Plaintiff's lane of travel from the wrong direction; running stop signs in front of or near Plaintiff; executing sudden U-turns to block,

startle, or menace Plaintiff; and harassing Plaintiff on sidewalks and in public spaces.

**38.** The John/Jane Doe Private Individual Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983 because they acted in concert with, at the direction of, and/or with the knowledge and encouragement of state actors, including but not limited to NYPD officers, law enforcement informants, or other persons with access to government resources and information. Private persons who conspire with government officials to deprive another of constitutional rights are themselves deemed to act under color of state law. See Dennis v. Sparks, 449 U.S. 24 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

**39.** The involvement of the Private Individual Defendants in a coordinated conspiracy with state actors is further supported by: the consistency and frequency of the harassment across multiple geographic locations within Queens; the evident knowledge these individuals displayed of Plaintiff's movements, routes, schedule, and daily routine; the improbability that such a sustained, multi-actor campaign could be conducted without organizational coordination by persons with access to information about Plaintiff beyond what ordinary private citizens would possess; and the temporal correlation between Plaintiff's complaint filings and the escalation of harassment by these private individuals. See Griffin v. Breckenridge, 403 U.S. 88 (1971); Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

**40.** Defendant Olamilekan Babatunde Sikiru is the individual who, on May 13, 2025, operated a motor vehicle (plate No. RPF 4853 (registered in Texas State) Honda Sedan that struck and collided with Plaintiff's vehicle (plate No. JPW 3779

(registered in NYS) on Van Wyck Expressway South, Neat Exit 12B in Queens, New York. This driver Olamilekan B. Sikiru was uninsured at the time of the collision and presented a false insurance card bearing multiple drivers' names and Texas registration, which Plaintiff believes, in the context of the ten-year pattern of targeting, was not merely coincidental but was part of the broader campaign of deliberate harm directed at Plaintiff.

**43.** All Doe Defendants are to be identified through the discovery process, including through: (a) subpoenas to the NYPD for 911 call records, patrol logs, desk officer logs, and complaint report databases covering the ten-year period; (b) FOIL requests for all records relating to Plaintiff's complaints to the NYPD; (c) subpoenas for telecommunications records, including records relating to the Blackberry missed-call incident; (d) records from the Queens DA's Office, the NYPD Internal Affairs Bureau, and other governmental bodies to which Plaintiff filed complaints; (e) traffic camera footage and other video surveillance; (f) motor vehicle records for vehicles involved in harassment incidents; and (g) any and all other discovery methods authorized by the Federal Rules of Civil Procedure.

**44.** At all times relevant herein, all Defendant NYPD officers were employed by Defendant City of New York and/or Defendant NYPD and were acting within the scope of their employment and under color of state law. The City and NYPD are vicariously liable for the acts of their officers committed within the scope of employment, and are independently liable under Monell v. Dep't of Social Services, 436 U.S. 658 (1978), for the unconstitutional policies, customs, and practices that caused the violations alleged herein.

**45.** Plaintiff is informed and believes, and on that basis alleges, that at all times relevant herein, each Defendant was the agent, employee, co-conspirator, and/or joint venturer of each other Defendant, and that each Defendant was acting within the course and scope of such agency, employment, conspiracy, and/or joint venture. Plaintiff will seek discovery to confirm and establish the full nature and extent of the relationships and agreements among Defendants.

**46.** Plaintiff is informed and believes that certain of the Private Individual Doe Defendants served as informants, surrogates, agents, or operatives of NYPD officers or other law enforcement personnel and were recruited, directed, compensated, or encouraged by such law enforcement personnel to harass and surveil Plaintiff. The use of civilian informants or surrogates by law enforcement to harass private citizens without lawful authority violates the Fourth Amendment right to be free from unreasonable searches and seizures and implicates the state action doctrine. See Katz v. United States, 389 U.S. 347 (1967); Samson v. California, 547 U.S. 843 (2006).

46A. Plaintiff possesses sworn affidavits and written statements from multiple individuals, including whistleblowers and other innocent persons across the United States, who have experienced similar treatment to that alleged herein. These affidavits and statements describe comparable incidents of official refusal to take complaints, failure to investigate reported misconduct, retaliatory behavior after reporting wrongdoing, and harmful actions by private stalkers or individuals acting under color of authority. Plaintiff alleges that the experiences documented by these whistleblowers and other victims demonstrate that his allegations are not isolated, but part of a broader pattern and practice of constitutional violations affecting multiple innocent persons in different states.

46B. Plaintiff reports that, due to fear arising from the conduct of stalkers and targeters described herein, he has remained inside his residence for extended periods of time, often for many days or months. Plaintiff states that he leaves his home only when absolutely necessary for work. Plaintiff alleges that this prolonged confinement has severely restricted his daily life, causing him to live in a manner he describes as “more worse than prison,” as he feels unable to move freely or safely outside his home.

46C. Plaintiff further reports that because of the fear and distress caused by the alleged conduct, he is unable to perform normal weekly shopping. Plaintiff states that he instead shops only once a month and at times relies on home delivery services because he does not feel safe going outside. Plaintiff alleges that this change in routine reflects the significant impact the alleged conduct has had on his ability to perform ordinary daily activities.

46D. Plaintiff additionally reports that he has been unable to take his wife out in his own car for many months, and at times for more than a year, due to fear and distress arising from the alleged conduct of wrongdoers. Plaintiff states that he avoids driving with his spouse because he feels unsafe and scared on the roads, sidewalks, and public areas. Plaintiff alleges that this has caused emotional strain, loss of normal family activities, and significant disruption to his personal life.

46E. Plaintiff states that whenever he enters his vehicle, he becomes extremely alert and fearful due to past experiences of sudden and unexpected interference by unknown individuals. Plaintiff reports that his eyes remain focused in all directions while driving because he anticipates that wrongdoers may appear from any corner or location without warning. Plaintiff alleges that these individuals often fail to use proper signals, abruptly enter his lane, or attempt unsafe maneuvers that force him to brake suddenly, creating a risk of collision. Plaintiff states that these incidents have caused him continuous fear, distress, and hypervigilance while operating his vehicle.

46F. Plaintiff further reports that when he attempts to enter a driveway—whether at his workplace or any other location—unknown individuals frequently block the driveway in various ways, preventing him from driving directly into the

entrance. Plaintiff alleges that he is often forced to wait until these individuals move their vehicles, honk his horn to request passage, or approach their vehicles to ask them to clear the driveway. Plaintiff states that these repeated obstructions have caused him significant distress and have interfered with his ability to safely and promptly enter designated driveways.

46F. Plaintiff additionally reports that individuals sometimes park their vehicles near driveways and, at the moment Plaintiff attempts to enter the driveway, they suddenly accelerate, drive straight forward, or pull out of parking spaces without warning. Plaintiff alleges that these abrupt movements force him to stop his vehicle immediately to avoid collision. Plaintiff states that these actions appear intended to create obstacles, disrupt his driving, or cause potential accidents, resulting in fear, emotional distress, and a sense of personal danger.

46G. Plaintiff reports that when he attempts to drive his vehicle out of a driveway—whether at his residence, workplace, or any other location—unknown individuals frequently obstruct his exit by parking their vehicles in a manner that blocks the driveway or by suddenly driving their vehicles in front of Plaintiff's car. Plaintiff alleges that some individuals appear to position their vehicles nearby deliberately, and at the moment Plaintiff begins to exit the driveway, they accelerate quickly, emerge from parked positions, or drive forward without warning, forcing Plaintiff to stop immediately. Plaintiff states that these incidents occur both during daytime and nighttime, including situations where vehicles emerge without headlights, causing Plaintiff to feel scared and unsafe. Plaintiff alleges that these repeated obstructions and sudden vehicle movements create significant fear, emotional distress, and a sense of personal danger, requiring him to wait for extended periods until the area clears before he can safely exit the driveway.

46H. Plaintiff reports that during late night hours, particularly when returning home from work and parking his vehicle near his former residence, he frequently observed situations that caused him fear and distress. Plaintiff states that on multiple occasions, a nearby vehicle remained parked with its engine running and headlights on, and that the moment Plaintiff parked his own car, the other vehicle

would immediately leave the area. Plaintiff alleges that these repeated occurrences made him feel unsafe and heightened his sense of vulnerability.

46 I. Plaintiff further reports that on about two or three late night occasions, groups of four or five individuals—both males and females—were present on the street near where he parked, engaging in music and dancing in the middle of the roadway; and also taking the photos or videos (or artificially faking like this as a drama). Plaintiff states that these situations made him fearful that he might be falsely accused of wrongdoing if he remained nearby. As a result, Plaintiff alleges that he would walk carefully along the extreme edge of the sidewalk, close to fences or walls, to avoid any interaction or misunderstanding.

46J. Plaintiff additionally reports that after passing such groups, he observed a parked vehicle with an individual sitting inside, appearing to watch the scene. Plaintiff states that this contributed to his fear that he might be falsely implicated in some incident. Plaintiff alleges that due to fear and distress, he did not take photographs or videos of these events, choosing instead to remain silent and move away quickly to protect himself. Plaintiff reports that these experiences caused significant emotional suffering, fear of false accusations, and a constant sense of personal danger during late night hours.

46K. Plaintiff requests that all defendants—including NYPD officers, investigators, and private individuals involved in the alleged misconduct—be held jointly and severally liable for all damages arising from the violations described herein. Plaintiff further requests that appropriate governmental authorities be directed to review, investigate, and take necessary disciplinary or corrective action against the officers, investigators, and private individuals whose conduct contributed to Plaintiff's harm, fear, emotional distress, and deprivation of constitutional rights.

46L. Plaintiff alleges that the NYPD investigators named herein are individually liable because they were directly responsible for evaluating Plaintiff's complaints, determining investigative steps, and deciding whether to provide protection or assistance. Plaintiff states that these investigators failed to perform their duties with reasonable care, acted with deliberate indifference, and ignored Plaintiff's repeated reports of harassment, fear, and danger. Plaintiff alleges that their conduct

contributed to Plaintiff's emotional distress, fear of retaliation, and deprivation of constitutional rights, making them proper defendants under 42 U.S.C. § 1983.

46M. Plaintiff states that after submitting a written complaint to the New York City Police Commissioner regarding stalking and targeting, he received a telephone call from an NYPD investigator whose number was blocked. Plaintiff alleges that the investigator instructed him to report immediately to the police station located at 92-08 222nd Street, Queens Village, New York, which is the NYPD 105th Precinct. Upon Plaintiff's arrival, the investigator directed Plaintiff to stand near an area containing holding rooms and ordered him to remain straight while another individual conducted a full body search over Plaintiff's clothing by standing behind the plaintiff so that the plaintiff could not see him (who was searching). Plaintiff reports that after the search, the investigator returned him to the initial seating area and, within minutes, handed Plaintiff a typed letter stating that Plaintiff was "mental" and needed to see a doctor. Plaintiff alleges that the investigator did not ask a single question about the detailed written complaint Plaintiff had submitted to the Police Commissioner, did not review any facts, and did not conduct any form of investigation. Plaintiff states that the investigator spoke in a rude, angry, and intimidating manner, causing Plaintiff fear and distress. Plaintiff alleges that the investigator's actions appeared designed to dismiss or discredit Plaintiff's complaint rather than investigate it, and that the investigator likely closed the complaint by labeling Plaintiff as mentally unstable. Plaintiff states that this experience caused significant emotional suffering and contributed to his belief that his complaint was not handled in a fair, professional, or lawful manner.

**47.** The City of New York is liable for the constitutional violations alleged herein not only under Monell based on policy, custom, and practice, but also under the state-created danger doctrine. Where state actors affirmatively create or enhance the danger to which a plaintiff is exposed, the state may be held liable under the Due Process Clause of the Fourteenth Amendment. Here, Defendants created

and/or actively participated in the danger by directing, encouraging, or acquiescing in the harassment of Plaintiff while simultaneously refusing to allow Plaintiff any official avenue of relief. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189 (1989); Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009).

**48.** Plaintiff's race, national origin, and color—specifically, his South Asian national origin—were motivating factors in the discriminatory denial of police services, the pattern of harassment, and the systematic refusal of NYPD officers to take his complaints over the ten-year period. Discriminatory denial of equal police protection on the basis of race, national origin, or color violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000); Washington v. Davis, 426 U.S. 229 (1976).

**49.** Alternatively and additionally, Plaintiff has been singled out for differential and discriminatory treatment on a class-of-one basis—that is, as an individual singled out for treatment different from that accorded to similarly situated individuals, without any rational basis for such differential treatment. Under Village of Willowbrook v. Olech, 528 U.S. 562 (2000), irrational singling out of an individual for differential treatment by the government is sufficient to state a claim under the Equal Protection Clause of the Fourteenth Amendment, even absent membership in a protected class.

**50.** Plaintiff has been subjected to a hostile public environment created and perpetuated by Defendants and their agents and co-conspirators. The sustained

nature of the harassment directed at Plaintiff—spanning approximately ten years, crossing multiple geographic locations within Queens, Long Island and other parts of USA, involving multiple actors, and encompassing both road harassment and sidewalk harassment—constitutes a hostile environment of sufficient severity and pervasiveness to support civil rights liability. See Pennsylvania State Police v. Suders, 542 U.S. 129 (2004).

**51.** The NYPD investigators identified herein as one of the John/Jane Doe NYPD Officers mishandled Plaintiff's formal complaints in a manner so deficient as to constitute not merely negligence but a deliberate or reckless failure to perform the basic duties of investigation. This investigators' conduct evidences either personal bias against Plaintiff, deliberate participation in the conspiracy against Plaintiff, or reckless disregard of Plaintiff's constitutional rights. See City of Canton v. Harris, 489 U.S. 378 (1989).

**52.** Each individual NYPD officer named herein as a Doe defendant is sued in his or her individual capacity for the denial of Plaintiff's constitutional rights. Individual NYPD officers are personally liable under 42 U.S.C. § 1983 for their own unconstitutional acts and omissions. Qualified immunity does not shield officers who violate clearly established constitutional rights. See Anderson v. Creighton, 483 U.S. 635 (1987). The rights violated herein—to equal protection, to be free from retaliation for protected speech, to be free from unreasonable surveillance—were clearly established at all times relevant to this Complaint.

**53.** Each individual NYPD officer named herein as a Doe defendant is also sued in his or her official capacity. Official capacity claims against NYPD officers are

tantamount to claims against the City of New York and the NYPD and serve to ensure that all available remedies, including prospective injunctive relief directing the NYPD to accept Plaintiff's future complaints, are available to Plaintiff. See Kentucky v. Graham, 473 U.S. 159 (1985).

**54.** The identities, badge numbers, and employment records of all Doe NYPD Officers will be obtained through discovery pursuant to the Federal Rules of Civil Procedure. Plaintiff specifically intends to obtain through discovery: all 911 call records for calls made by or on behalf of Plaintiff over the ten-year period; all desk officer logs and complaint report records for all NYPD precincts serving the areas of Queens and other parts of our USA in which Plaintiff resides and operates; all NYPD Internal Affairs Bureau records relating to complaints filed by or on behalf of Plaintiff; all records of communications between NYPD officers and any civilian informants; and all records related to the NYPD investigation of Plaintiff's formal complaint.

**55.** Plaintiff reserves the right to amend this Complaint to substitute the true names of all Doe defendants when their identities are ascertained through discovery, and to add additional parties as warranted by the evidence revealed in discovery. Plaintiff further reserves the right to assert additional claims and theories of recovery as warranted by the evidence. The naming of Doe defendants and the description of their conduct as set forth herein is based on Plaintiff's personal knowledge, direct observation, and reasonable inference from the pattern of events he has experienced over the ten-year period at issue.

## FACTUAL ALLEGATIONS

### A. Ten-Year Pattern of Targeting and Harassment(Paragraphs 56–90)

**56.** Plaintiff Raj Thakur hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**57.** For a period of approximately ten years preceding the filing of this Complaint, Plaintiff Raj Thakur has been subjected to a continuous, coordinated, and escalating pattern of targeting, surveillance, harassment, intimidation, defamation, and civil rights violations. This pattern was not the product of random or isolated incidents but was systematic, deliberate, and organized. The pattern demonstrates a level of coordination, persistence, and geographic consistency that is not explainable by coincidence and that is consistent only with organized direction by persons with knowledge of Plaintiff's movements, residence, and routine.

**58.** The targeting and harassment of Plaintiff began approximately ten years prior to the filing of this Complaint. At first, Plaintiff noticed individual incidents that were unusual but that he was unable to immediately identify as part of a coordinated pattern. Over time, however, the frequency, consistency, geographic spread, and obvious coordination of the incidents made it unmistakably clear to Plaintiff that he was being deliberately and systematically targeted. Plaintiff's observations are consistent with coordinated harassment campaigns documented in civil rights jurisprudence. See Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009).

**59.** Private individuals—identified herein as John/Jane Doe Private Individuals 1–100—apparently acting in concert with, at the direction of, or with the encouragement of persons with access to government resources, law enforcement communications, and knowledge of Plaintiff's daily movements and schedule, began following, surveilling, and harassing Plaintiff. These individuals were not known to Plaintiff and had no apparent personal motive for targeting him, which strongly suggests their activities were directed or coordinated by a third party. See Dennis v. Sparks, 449 U.S. 24 (1980).

**60.** The road harassment directed at Plaintiff has been continuous and multi-faceted. Plaintiff has been subjected to systematic tailgating—instances in which unknown drivers follow Plaintiff's vehicle at abnormally close range over extended distances within Queens and other parts of our USA, in a manner clearly intended not merely to keep pace with traffic but to intimidate, pressure, and harass Plaintiff. These tailgating incidents have occurred with a frequency that plainly exceeds any reasonable statistical probability of coincidence.

**61.** Plaintiff has further been subjected to systematic intentional slowing—incidents in which unknown drivers place themselves in front of Plaintiff's vehicle and deliberately reduce their speed far below the normal rate of traffic flow, without any apparent traffic justification, in a manner clearly intended to impede Plaintiff's travel, frustrate him, and interfere with his daily activities. These incidents occurred repeatedly over multiple years and at multiple locations within Queens, New York and other parts of USA demonstrating a pattern inconsistent with random traffic behavior.

**62.** Plaintiff has further been subjected to vehicles entering his lane of travel from the opposite direction—that is, vehicles traveling the wrong way on a road or in a lane, directly toward Plaintiff's vehicle, in a manner that created a risk of collision and was clearly intended to frighten and intimidate Plaintiff. These wrong-way incidents, like the tailgating and intentional slowing incidents, occurred repeatedly over multiple years, demonstrating a coordinated pattern rather than individual accidents or errors.

**63.** Plaintiff has further been subjected to unknown individuals running stop signs in front of or near Plaintiff's vehicle, in a manner that created a danger of collision and was clearly intended to startle, intimidate, and harass Plaintiff. These stop-sign incidents are consistent with the other categories of road harassment directed at Plaintiff and reinforce the conclusion that the road harassment campaign was coordinated and deliberate rather than coincidental.

**64.** Plaintiff has further been subjected to sudden and unexpected U-turns by vehicles near him—instances in which drivers in Plaintiff's vicinity execute sudden, sharp U-turns without warning and without apparent traffic purpose, in a manner clearly designed to block Plaintiff's path, startle him, and disrupt his travel. These sudden U-turn incidents are a recurring element of the systematic road harassment campaign directed at Plaintiff and are consistent with coordinated tactics designed to prevent Plaintiff from traveling freely.

**65.** The road harassment described in paragraphs 60 through 64 herein occurred at multiple locations throughout Queens, New York and other parts of USA, over a period of approximately ten years, and involved multiple different individuals in

multiple different vehicles. The geographic spread and temporal duration of the harassment are inconsistent with the actions of any single private individual acting alone and are instead consistent with an organized campaign involving multiple participants acting in coordination. Plaintiff intends to document the full scope of these incidents through discovery, including through traffic camera records and vehicle registration records. See 42 U.S.C. § 1983.

**66.** In addition to the road harassment, Plaintiff has been subjected to harassment on sidewalks and in other public spaces within Queens, New York and other parts of our USA. Unknown individuals have followed Plaintiff on foot, have positioned themselves in or near Plaintiff's path in an intimidating manner, and have otherwise harassed Plaintiff in public spaces. This sidewalk and public space harassment is continuous with the road harassment and constitutes additional evidence of a coordinated campaign of targeting directed at Plaintiff. Such targeted harassment of an individual by coordinated private actors at the direction or encouragement of state actors implicates constitutional protections. See Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982).

**67.** Plaintiff has received defamatory and emotionally disturbing messages transmitted to his personal mobile telephone and email accounts by unknown wrongdoers over the course of the ten-year period of harassment. These defamatory messages contain false statements of fact about Plaintiff, are designed to damage Plaintiff's reputation, and have caused Plaintiff to suffer injury to his professional standing, business relationships, and personal reputation. The transmission of these defamatory messages is consistent with the broader pattern

of targeting directed at Plaintiff and is part of the coordinated campaign of harassment. See Paul v. Davis, 424 U.S. 693 (1976).

**68.** Unknown persons have engaged in the deliberate and malicious slander of Plaintiff to persons who know him personally and professionally, including landlords, neighbors, friends, acquaintances, and business contacts within the Queens community and all other places of USA. This slander consists of false statements of fact about Plaintiff communicated verbally to third parties, with knowledge of or reckless disregard for their falsity, and with the intent to damage Plaintiff's reputation and professional relationships. As a direct and proximate result of this slander, Plaintiff has suffered damage to his professional relationships, loss of business opportunities, and injury to his standing in his community. See Murphy v. American Home Products Corp., 58 N.Y.2d 293 (1983).

**69.** The defamatory messages and slanderous statements directed at Plaintiff were calculated to isolate Plaintiff professionally and socially, to undermine his ability to earn a living as a real estate broker, and to destroy his reputation as a good citizen, a former attorney, and a member of the Queens community. These acts of defamation and slander constitute intentional torts under New York law and, to the extent they were perpetrated by or in concert with state actors, implicate constitutional protections. See Paul v. Davis, 424 U.S. 693 (1976); Howell v. New York Post Co., 81 N.Y.2d 115 (1993).

**71.** Plaintiff believes, based on direct personal observation and the consistent patterns described herein, that some of the Private Individual Doe Defendants were and are acting at the direction of, in coordination with, or with the knowledge

and active encouragement of government actors, including but not limited to NYPD officers, their informants, or other persons with access to law enforcement resources and databases. The behavioral patterns exhibited by the private harassers—their evident knowledge of Plaintiff's movements, their coordinated and consistent tactics, and the geographic spread of their activities across multiple precincts—are hallmarks of organized law enforcement direction rather than spontaneous private conduct. See Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995).

**72.** The systematic nature of the harassment directed at Plaintiff—its duration, consistency, geographic spread, multiple-actor character, apparent knowledge of Plaintiff's schedule and movements, and its temporal correlation with Plaintiff's complaint filings—constitutes compelling circumstantial evidence of the existence and operation of a conspiracy among Defendants and their agents and co-conspirators to deprive Plaintiff of his constitutional rights. Circumstantial evidence is fully competent and sufficient to establish a civil rights conspiracy. See Crawford-El v. Britton, 523 U.S. 574 (1998).

**73.** The harassment directed at Plaintiff has caused him to suffer profound and lasting harm, including physical injuries from the road harassment and the May 13, 2025 collision; severe emotional distress, anxiety, fear, hypervigilance, and disruption of daily activities; damage to his professional reputation and business relationships; lost wages and diminished earning capacity; inability to freely use public roads and public spaces without fear of harassment; and an ongoing sense

of fear, vulnerability, and exposure to continuing harm. These injuries are cognizable under federal and state law and are compensable in this action.

**74.** The harassment directed at Plaintiff constitutes a hostile public environment of the most severe and pervasive character. Plaintiff has been unable to conduct his ordinary daily activities—including commuting to work, meeting clients in his real estate business, performing his duties as a youth counselor, visiting friends and family, and moving freely throughout his community—without being subjected to coordinated harassment, surveillance, and intimidation. This restriction on Plaintiff's freedom of movement constitutes a deprivation of his liberty interests protected by the Fifth and Fourteenth Amendments to the United States Constitution. See Pennsylvania State Police v. Suders, 542 U.S. 129 (2004).

**75.** The pattern of harassment directed at Plaintiff includes incidents in which unknown individuals appear to have knowledge of Plaintiff's destination, route, and estimated time of arrival before Plaintiff himself arrives at a given location. This foreknowledge, repeated across multiple incidents in multiple locations, is consistent only with either electronic surveillance of Plaintiff's communications or movements, or with the coordination of informants stationed along Plaintiff's route. Either scenario implicates the Fourth Amendment prohibition on unreasonable searches and seizures and the right to be free from warrantless government surveillance. See Katz v. United States, 389 U.S. 347 (1967).

**76.** Plaintiff has, throughout the ten-year period of harassment, maintained detailed contemporaneous records of incidents as they occurred, including written notes, photographic documentation where possible, records of 911 calls made,

records of visits to NYPD precincts, and copies of written complaints filed with governmental authorities. These records will be produced in discovery and will constitute a substantial evidentiary foundation for the claims asserted herein. Plaintiff respectfully invites the Court to permit broad discovery to expose the full scope of the conspiracy and the identities of all participants.

**77.** The targeting and harassment of Plaintiff has been discriminatory in character, motivated at least in part by Plaintiff's South Asian national origin, race, and color. Plaintiff is one of a relatively small number of persons of South Asian origin residing in, and he believes that his ethnic background and national origin were factors in his selection as a target for the campaign of harassment described herein. Discriminatory targeting of individuals on the basis of race, national origin, or color by state actors or those acting in concert with state actors violates the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. See Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977).

**78.** The road harassment directed at Plaintiff created not only the emotional harms described herein but also a concrete and serious danger of physical injury. Vehicles tailgating Plaintiff, entering his lane going the wrong direction, running stop signs in front of him, and executing sudden U-turns near him all constituted dangerous conditions that could have resulted in serious injury or death. This danger was not abstract or hypothetical—it was real, immediate, and repeated. The failure of the NYPD to investigate or take any action to address this danger, despite Plaintiff's repeated complaints, constitutes deliberate indifference to Plaintiff's physical safety. See Okin, 577 F.3d 415 (2d Cir. 2009).

**79.** The road and sidewalk harassment directed at Plaintiff had and continues to have a chilling effect on his exercise of constitutionally protected rights. Plaintiff has been deterred from freely traveling on public roads, has altered his routes and schedule to try to avoid harassment, and has been caused to feel surveilled and monitored at all times. These restrictions on Plaintiff's freedom of movement and association constitute deprivations of rights protected by the First and Fourth Amendments to the United States Constitution. See Katz v. United States, 389 U.S. 347 (1967).

**80.** The harassment directed at Plaintiff further had and continues to have a chilling effect on Plaintiff's exercise of his First Amendment right to petition government for redress of grievances. Knowing that each complaint he filed with governmental authorities was followed by an escalation of harassment, Plaintiff faced an agonizing choice: endure the harassment in silence, or file complaints and face even more severe harassment. This coercive dynamic itself constitutes a violation of Plaintiff's First Amendment rights. See Hartman v. Moore, 547 U.S. 250 (2006).

**81.** The harassment directed at Plaintiff constitutes not merely isolated torts but a sustained pattern of civil rights violations actionable under the continuing violation doctrine. Each individual act of harassment—each tailgating incident, each intentional slow-down, each wrong-way incursion, each stop-sign running, each sudden U-turn, each defamatory message, each act of slander—is a discrete violation that separately triggers the statute of limitations. Moreover, under the

continuing violation doctrine, the entire pattern is treated as a single continuing violation that tolls the limitations period. See Morgan, 536 U.S. 101 (2002).

**82.** The road and sidewalk harassment directed at Plaintiff constitutes intentional interference with Plaintiff's liberty of movement, which is a fundamental liberty interest protected by the Due Process Clause of the Fourteenth Amendment. Where the government, directly or through those acting in concert with it, interferes with an individual's freedom of movement without lawful justification, that interference constitutes a deprivation of liberty without due process of law. See City of Chicago v. Morales, 527 U.S. 41 (1999).

**83.** The coordinated surveillance of Plaintiff's movements, routes, schedule, and daily routine constitutes an unreasonable search and seizure under the Fourth Amendment to the United States Constitution. The Fourth Amendment protects individuals not only from physical seizures of their persons or property but also from unreasonable governmental monitoring and surveillance of their movements in public spaces. See United States v. Jones, 565 U.S. 400 (2012) (plurality opinion holding that long-term warrantless GPS surveillance of vehicle violates Fourth Amendment); Katz v. United States, 389 U.S. 347 (1967).

**84.** The surveillance directed at Plaintiff was conducted without any warrant, without any lawful justification, without Plaintiff's knowledge or consent, and without any judicial or administrative oversight. This warrantless surveillance violated Plaintiff's reasonable expectation of privacy in his movements, communications, and activities. The Fourth Amendment's prohibition on unreasonable searches and seizures applies with full force to governmental

surveillance of the movements of private citizens. See Katz, 389 U.S. 347 (1967); Samson v. California, 547 U.S. 843 (2006).

**85.** As a direct and proximate result of the ten-year pattern of targeting, harassment, and civil rights violations described herein, Plaintiff has suffered severe and permanent harm, including: chronic anxiety, post-traumatic stress, and emotional distress; physical injury from the road harassment and the May 13, 2025 collision; damage to his professional reputation and business relationships; lost wages and diminished earning capacity as a real estate broker and nurse aide/DSP; the costs of attending NYPD precincts and filing complaints with governmental authorities over ten years; and an ongoing fear for his personal safety and the safety of his property.

**86.** Plaintiff's suffering was compounded by the systematic refusal of NYPD officers to take his complaints, which left him without any official avenue of relief and without any documentation of the incidents he was experiencing. This deliberate deprivation of the official protection that the NYPD was duty-bound to provide was itself a constitutional violation and an independent cause of Plaintiff's harm. See Monroe v. Pape, 365 U.S. 167 (1961); Okin, 577 F.3d 415 (2d Cir. 2009).

**87.** The harassment directed at Plaintiff was not limited to road and sidewalk incidents. It included a systematic campaign of reputation destruction through defamatory messages and slander, described in paragraphs 67 through 69 herein. This reputation destruction campaign was calculated to damage Plaintiff's professional and personal relationships, undermine his business as a real estate

broker, and isolate him socially, thereby magnifying the psychological harm of the physical harassment and rendering Plaintiff more vulnerable to further targeting.

**88.** Plaintiff avers and will establish through discovery that the road harassment, sidewalk harassment, defamation, slander, surveillance, and police refusal to take complaints were all components of a single, unified conspiracy directed at Plaintiff by a combination of state actors and private individuals acting in concert. The unified character of this conspiracy is evidenced by: the simultaneous or sequential occurrence of road harassment, defamatory messages, and acts of slander, all directed at Plaintiff at or around the same times; the apparent coordination among multiple actors; and the consistent pattern of escalation following each of Plaintiff's complaint filings with governmental authorities.

**89.** The conspiracy against Plaintiff was and is motivated, at least in part, by racial animus and discriminatory intent based on Plaintiff's South Asian national origin, race, and color. This discriminatory motivation satisfies the class-based animus requirement of 42 U.S.C. § 1985(3), which requires that a conspiracy to deprive a person of civil rights be motivated by some racial or otherwise class-based invidiously discriminatory animus. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

**90.** The foregoing pattern of targeting, harassment, surveillance, defamation, slander, and coordinated civil rights violations constitutes a clear and egregious violation of Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff will demonstrate through discovery and trial the full scope,

duration, and severity of the campaign directed against him and the identities of all participants in that campaign.

B. Police Refusal to Take Complaints Over Ten Years(Paragraphs 91–130)

**91.** On numerous occasions spanning approximately ten years preceding the filing of this Complaint, Plaintiff Raj Thakur presented himself in person at New York City Police Department precincts located within Queens, New York, and/or called 911 to report the foregoing incidents of harassment, targeting, surveillance, threats, and civil rights violations. On each and every such occasion, NYPD officers refused or failed to prepare a police incident report, refused or failed to prepare a complaint report, and refused or failed to take any official action whatsoever in response to Plaintiff's documented concerns.

**92.** The refusal of NYPD officers to take Plaintiff's complaints is not a matter of any single officer's individual decision on any single occasion. Rather, this refusal was consistent, unbroken, and systematic across multiple officers, multiple precincts, and multiple visits and calls over a period of approximately ten years. This consistent pattern of refusal is the hallmark of a de facto policy or custom of the NYPD rather than individual officer discretion. See Monell v. Dep't of Social Services, 436 U.S. 658 (1978); Monroe v. Pape, 365 U.S. 167 (1961).

**93.** On each occasion when Plaintiff called/calls 911 to report the harassment directed at him, NYPD officers dismissed Plaintiff's complaints without conducting any investigation, without consulting any superior officer, without reviewing any records, and without offering Plaintiff any official assistance or recourse. Officers

routinely told Plaintiff, in words or substance, that there was nothing they could do, that the incidents he described did not constitute crimes or violations on one ground or the other ground, This dismissive and hostile treatment of a civilian complainant is itself actionable under 42 U.S.C. § 1983. See Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995).

**94.** On occasions when Plaintiff called 911 to report the harassment directed at him, NYPD officers who were dispatched to or responded to his calls similarly failed to take any official action, failed to prepare any report, and failed to offer Plaintiff any meaningful assistance. In some instances, officers who responded to Plaintiff's 911 calls were dismissive, discourteous, and unresponsive to the specific incidents Plaintiff was reporting. The failure of 911 to produce any official response or documentation to Plaintiff's repeated calls over a ten-year period is itself compelling evidence of a systemic policy of denial of police services to Plaintiff.

**95.** NYPD officers are required under New York law and NYPD policy to accept and document complaints of criminal activity and civil rights violations presented to them by members of the public. The consistent refusal of multiple officers at multiple precincts to comply with this obligation over a ten-year period could not have occurred without the knowledge, acquiescence, and/or implicit direction of supervisory officers and ultimately of the Police Commissioner. This constitutes a custom or usage of the NYPD within the meaning of 42 U.S.C. § 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

**96.** The failure of NYPD officers to take Plaintiff's complaints constituted a denial of equal protection under the Fourteenth Amendment to the United States

Constitution. Similarly situated persons who reported crimes, threats, and harassment to the NYPD received police services—complaint reports were taken, investigations were initiated, and official action was taken. Plaintiff was denied these services, which are routinely provided to other similarly situated complainants, based on discriminatory motivation or irrational differential treatment. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000); Washington v. Davis, 426 U.S. 229 (1976).

**97.** The failure of NYPD officers to take Plaintiff's complaints further constituted deliberate indifference to Plaintiff's federally protected rights. Where the police are aware of a pattern of harassment directed at a private citizen, and where that citizen repeatedly seeks police assistance, and where the police systematically fail to respond or assist, the police may be found to have acted with deliberate indifference to the citizen's constitutional rights. See Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009); City of Canton v. Harris, 489 U.S. 378 (1989).

**98.** In Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415 (2d Cir. 2009), the Second Circuit held that a police department's "encouraging, condoningm or acquiescing in" a pattern of harm directed at a private citizen may constitute state action sufficient to impose § 1983 liability. The NYPD's consistent refusal to take Plaintiff's complaints over a period of approximately ten years—despite the known pattern of harassment Plaintiff was experiencing—satisfies the standard established in Okin and imposes § 1983 liability on the NYPD and its supervisors.

against the harassers, unable to pursue insurance claims, and unable to build the evidentiary record necessary to vindicate his rights in a court of law. This deprivation of access to justice is itself a constitutional violation. See Monroe v. Pape, 365 U.S. 167 (1961).

**102.** An NYPD investigator(s) was/were at some point assigned to review one of Plaintiff's formal complaints. Rather than conducting a proper, thorough, and impartial investigation of Plaintiff's complaint, this investigator mishandled the investigation by: failing to interview relevant witnesses; failing to review available surveillance camera footage; failing to consult relevant NYPD records, including 911 call logs and patrol logs for the affected area; failing to conduct any meaningful follow-up with Plaintiff; and ultimately closing the investigation without any meaningful findings or recommendations.

**103.** The mishandling of Plaintiff's complaint(s) by the NYPD investigator(s) constitutes an independent violation of Plaintiff's constitutional right to meaningful access to governmental redress. The investigator's failure to conduct a proper investigation deprived Plaintiff of the opportunity to have his complaint fairly reviewed and to receive the protection to which he was entitled under the law. This failure is consistent with the broader pattern of deliberate indifference to Plaintiff's rights. See City of Canton v. Harris, 489 U.S. 378 (1989).

**104.** The NYPD investigator's mishandling of Plaintiff's complaint(s) may itself have been motivated by discriminatory animus, retaliatory intent, or participation in the conspiracy against Plaintiff. If the investigator(s) was motivated by any of these factors, he or she is personally liable under 42 U.S.C. § 1983 for the resulting

deprivation of Plaintiff's constitutional rights. The investigator is additionally liable under 42 U.S.C. § 1985 for participating in or furthering the conspiracy against Plaintiff. Discovery will reveal the investigator's identity and the full circumstances of the investigation.

**105.** Plaintiff avers that he will be able to establish through discovery, including through 911 records, police complaint report databases, desk officer logs, and NYPD internal review records, that the refusal to take Plaintiff's complaints was not the individual decision of any single officer but was instead a consistent departmental response to Plaintiff specifically, reflecting a de facto policy of denying official police services to Plaintiff. This de facto policy constitutes a municipal custom within the meaning of Monell, 436 U.S. 658 (1978), and is actionable under 42 U.S.C. § 1983.

**106.** The NYPD's refusal to accept Plaintiff's complaints further violated his right to petition government for redress of grievances under the First Amendment to the United States Constitution. By refusing to accept and document Plaintiff's complaints, NYPD officers effectively nullified Plaintiff's constitutional right to seek governmental redress of his grievances. This nullification of Plaintiff's First Amendment right is actionable under 42 U.S.C. § 1983 independently of any Fourth or Fourteenth Amendment claim. See Hartman v. Moore, 547 U.S. 250 (2006).

**107.** The refusal of NYPD officers to take Plaintiff's complaints, evaluated in conjunction with the pattern of harassment escalating following each of Plaintiff's complaint filings with other authorities, gives rise to a compelling inference that NYPD officers were not merely indifferent to Plaintiff's complaints but were actively

participating in or facilitating the conspiracy to deprive Plaintiff of his constitutional rights. This inference is supported by the temporal correlation between Plaintiff's complaint filings and the escalation of harassment, and by the consistent pattern of refusal across multiple officers and precincts. See Dennis v. Sparks, 449 U.S. 24 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

**108.** The harm caused to Plaintiff by the NYPD's refusal to take his complaints is distinct from and in addition to the harm caused by the underlying harassment. Plaintiff was denied the sense of safety and official protection to which every citizen is entitled. Plaintiff was denied access to the legal mechanisms—restraining orders, criminal charges, civil remedies—that would have been available to him had proper documentation of the harassment been made. And Plaintiff was denied the reassurance that the government agencies charged with protecting his rights were performing their constitutional obligations. These deprivations are independently harmful and independently actionable under 42 U.S.C. § 1983.

**109.** Plaintiff will seek through discovery all 911 records for calls made by or on behalf of Plaintiff over the ten-year period at issue in this action, all desk officer logs and complaint report records for all relevant NYPD precincts covering the areas of Queens and elsewhere where Plaintiff resides and works, all records of any NYPD investigation of Plaintiff's complaints, all NYPD Internal Affairs Bureau records relating to complaints about the officers identified herein, and all NYPD training records relating to civilian complaint acceptance and processing. These records will document the full scope of the NYPD's refusal to serve Plaintiff and will establish the municipal policy and custom on which Plaintiff's Monell claims are based.

**110.** The NYPD's de facto policy of denying police services to Plaintiff is further evidenced by the consistent pattern of officer behavior over time. No single NYPD officer, acting alone and without direction or example, would systematically refuse to take a civilian's harassment complaints on every one of numerous occasions over a period of ten years. Such consistency of refusal, across multiple officers and multiple precincts, is the product of a departmental culture, practice, or informal policy that condones or requires officers to dismiss or refuse Plaintiff's complaints. See Vann v. City of New York, 72 F.3d 1040 (2d Cir. 1995).

**111.** The fact that NYPD officers repeatedly dismissed Plaintiff's complaints without conducting any investigation, without consulting any superior officer, and without offering Plaintiff any recourse constitutes strong evidence not only of deliberate indifference but of specific intent to deny Plaintiff the police services to which he was entitled. This evidence of specific intent, if established at trial, would support a finding of intentional discrimination and would preclude the City from relying on any legitimate justification for the officers' conduct. See Washington v. Davis, 426 U.S. 229 (1976).

**112.** The NYPD's failure to accept, document, and investigate Plaintiff's complaints over a period of approximately ten years constitutes an abdication of the most fundamental obligation of law enforcement: to protect the constitutional rights of all persons within their jurisdiction, regardless of race, national origin, color, or any other protected characteristic. This abdication of duty is not merely a breach of NYPD policy or New York State law—it is a constitutional violation of the highest order, for which Plaintiff is entitled to full redress in this Court.

**113.** In addition to FOIL requests and subpoenas for NYPD records, Plaintiff will seek through discovery records from the New York City Civilian Complaint Review Board ("CCRB"), the New York City Department of Investigation, the New York State Division of Criminal Justice Services, and any other governmental body that received or reviewed complaints by or on behalf of Plaintiff relating to the incidents described herein. Plaintiff anticipates that these records will corroborate the pattern of police refusal and mishandling of Plaintiff's complaints alleged herein.

**114.** Each individual refusal by an NYPD officer to take Plaintiff's complaint constitutes a discrete constitutional violation actionable under 42 U.S.C. § 1983. Each such refusal is a separate deprivation of Plaintiff's rights under the First Amendment (right to petition for redress), the Fourteenth Amendment (equal protection and due process), and the general right to receive equal and non-discriminatory police services. These individual violations, taken together, constitute the pattern of a municipal custom and practice actionable under Monell, 436 U.S. 658 (1978).

**115.** The consistent refusal of NYPD officers to take Plaintiff's complaints further constitutes a de facto prior restraint on Plaintiff's ability to exercise his First Amendment right to petition for redress, insofar as Plaintiff was effectively told on each occasion that his petitioning of the NYPD was futile and would produce no official response. This chilling of Plaintiff's right to seek governmental redress, imposed by the official refusal of government actors to respond to his petitions, constitutes a violation of the First Amendment to the United States Constitution. See Hartman v. Moore, 547 U.S. 250 (2006).

**116.** The conduct of NYPD officers in refusing to take Plaintiff's complaints was compounded by their occasional discourtesy and hostility toward Plaintiff when he presented himself at precincts. On certain occasions, officers were dismissive, impatient, or openly contemptuous of Plaintiff's concerns. This treatment, in addition to the refusal to take complaints, constitutes evidence of discriminatory animus directed at Plaintiff and further supports Plaintiff's claims of equal protection violation and race or national origin discrimination. The official discourtesy of police officers toward a civilian complainant on the basis of his national origin is itself a cognizable civil rights violation. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

**117.** Plaintiff's experience with the NYPD's refusal to take his complaints stands in stark contrast to his understanding of how similarly situated complainants of different races or national origins have been treated by the NYPD. Plaintiff has reason to believe, and will seek to establish through discovery, that similarly situated non-South-Asian complainants reporting similar types of harassment to the NYPD precincts in his area received complaint reports, investigations, and official assistance that were consistently denied to Plaintiff. This comparative evidence will support Plaintiff's equal protection claim. See Village of Willowbrook, 528 U.S. 562 (2000).

**118.** The ten-year period during which NYPD officers refused to take Plaintiff's complaints encompasses numerous occasions during which Plaintiff specifically described the road harassment incidents—including tailgating, intentional slowing, wrong-way incursions, stop-sign running, and sudden U-turns—and sought police

intervention and documentation. On each such occasion, officers refused to document the incidents and refused to dispatch personnel to monitor the roads and identify the harassers. This failure to respond to specific, articulable reports of specific, dangerous incidents constitutes deliberate indifference of the most serious character. See Okin, 577 F.3d 415 (2d Cir. 2009).

**119.** The ten-year period during which NYPD officers refused to take Plaintiff's complaints also encompasses occasions during which Plaintiff specifically described the defamatory messages he was receiving and the slander being directed at him, and sought police intervention and documentation. On each such occasion, officers refused to take action, even though the transmission of harassing or defamatory communications to a victim may constitute criminal harassment, aggravated harassment, or related offenses under New York law. This refusal to document or investigate potentially criminal conduct directed at Plaintiff further supports the pattern of deliberate indifference and discriminatory denial of police services.

**120.** The NYPD's refusal to take Plaintiff's complaints over a ten-year period caused Plaintiff to suffer compounded harm by forcing him to pursue relief through non-police channels—including filing complaints with the Queens DA, the Police Commissioner, the US Department of Justice, the New York State Attorney General, and the Governor—and then by experiencing the retaliatory escalation of harassment that followed each such complaint. Had the NYPD taken Plaintiff's complaints as required by law, the harassment campaign against Plaintiff might have been stopped or curtailed years ago. The NYPD's refusal is thus a proximate

cause of all harm Plaintiff has suffered since each individual refusal. See City of Canton, 489 U.S. 378 (1989).

**121.** NYPD Complaint Report #61, commonly known as a "61 report," is a fundamental instrument of police documentation that NYPD officers are required to prepare when a crime, attempted crime, or suspicious incident has been reported to them. The failure of NYPD officers to prepare 61 reports in response to Plaintiff's complaints over a period of ten years represents a systematic breakdown of basic law enforcement protocol that is consistent only with a deliberate decision to deny Plaintiff this protection. The absence of 61 reports for Plaintiff's complaints over a ten-year period will itself be powerful evidence of the municipal custom of denying police services to Plaintiff.

**122.** The NYPD's failure to maintain records of Plaintiff's complaints—which failure Plaintiff anticipates will be confirmed when FOIL requests are processed—may additionally give rise to a spoliation inference and may implicate obligations under New York's Freedom of Information Law and the federal Freedom of Information Act. Plaintiff reserves the right to seek sanctions and adverse inferences if it is established that records of Plaintiff's complaints were not maintained as required by law or were destroyed.

**123.** Plaintiff avers that the NYPD's failure to take his complaints over a ten-year period was not only discriminatory and retaliatory but also was itself a component of the conspiracy to deprive Plaintiff of his constitutional rights. By refusing to take Plaintiff's complaints, NYPD officers participated in and advanced the conspiracy by ensuring that no official record of the harassment was created, thereby protecting

the private individual co-conspirators from accountability and ensuring that Plaintiff had no evidentiary basis on which to seek judicial relief. See 42 U.S.C. §§ 1985, 1986; Griffin v. Breckenridge, 403 U.S. 88 (1971).

**124.** Each John/Jane Doe NYPD Officer who refused to take Plaintiff's complaint on any occasion over the ten-year period is personally liable under 42 U.S.C. § 1983 for the constitutional violations resulting from that refusal. The right of a citizen to non-discriminatory police services and to have his complaints of criminal activity documented and investigated was clearly established at the time of each refusal. No officer acting reasonably could have believed that refusing to take harassment complaints from a citizen on a repeated basis over ten years was consistent with his or her constitutional obligations. See Anderson v. Creighton, 483 U.S. 635 (1987).

**125.** In addition to the personal liability of individual officers, the City of New York is liable under Monell for the NYPD's custom and practice of refusing to take Plaintiff's complaints. Where a sufficiently widespread practice or custom of constitutional violations exists within a municipal agency, even absent a formally adopted policy, the municipality is liable under § 1983. See Monell, 436 U.S. 658 (1978); Vann, 72 F.3d 1040 (2d Cir. 1995). The ten-year pattern of refusal to take Plaintiff's complaints plainly satisfies the widespread-practice standard established by Monell and its progeny.

**126.** Supervisory NYPD officers at all relevant precincts are additionally liable under 42 U.S.C. § 1983 for their failure to adequately supervise, direct, and correct the rank-and-file officers who refused to take Plaintiff's complaints. A supervisory

officer who fails to act on information indicating unconstitutional acts by his subordinates, who demonstrates gross negligence in failing to supervise subordinates who commit the violations, or who exhibits deliberate indifference to the rights of those with whom his subordinates interact may be found personally liable under § 1983. See Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995).

**127.** The Police Commissioner of the City of New York, as the final policymaking authority for the NYPD, is additionally liable under § 1983 for the unconstitutional custom and practice of refusing to take Plaintiff's complaints and for the failure to train officers to properly receive and document civilian complaints. The Police Commissioner is charged with knowledge of the widespread practice of officers refusing to take civilian complaints of the nature at issue here, and his failure to remedy that practice constitutes deliberate indifference at the highest level of municipal government. See Pembaur, 475 U.S. 469 (1986); City of Canton, 489 U.S. 378 (1989).

**128.** Plaintiff also avers that the NYPD's refusal to take his complaints was connected to and enabled by a failure of training. NYPD officers were not adequately trained to recognize, respond to, or document the type of coordinated civilian harassment that Plaintiff was reporting. This failure of training constitutes deliberate indifference to the rights of civilians in Plaintiff's position and is actionable under City of Canton v. Harris, 489 U.S. 378 (1989). The need for adequate training in the recognition and documentation of coordinated harassment and civil rights violations was so obvious that the failure to provide such training itself evinces deliberate indifference.

**129.** As a direct and proximate result of the NYPD's refusal to take Plaintiff's complaints over a period of approximately ten years, Plaintiff was denied access to the justice system, was denied the documentation necessary to pursue legal remedies, was denied the official protection to which every citizen is entitled, and was subjected to the continuing and worsening harm of the harassment campaign directed at him. Plaintiff suffered severe emotional distress, anxiety, and loss of faith in governmental institutions as a direct result of the NYPD's unconstitutional refusal to serve him. These harms are compensable in this action.

**130.** In addition to civil damages, Plaintiff seeks injunctive and declaratory relief directing the NYPD to accept and process all future complaints filed by Plaintiff, and declaring that the NYPD's refusal to take Plaintiff's complaints over the ten-year period violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983. Such declaratory and injunctive relief is necessary and appropriate to prevent the continuation of the unconstitutional conduct described herein. See 42 U.S.C. § 1983; 28 U.S.C. §§ 2201, 2202.

C. Complaints to Authorities and Retaliatory Escalation(Paragraphs 131–160)

**131.** Unable to obtain any relief or redress from the New York City Police Department through his repeated visits to precincts and calls to 911, Plaintiff Raj Thakur exercised his constitutionally protected right to petition government for redress of grievances by filing formal written complaints with multiple governmental authorities at the local, state, and federal levels, describing in detail

the harassment, targeting, surveillance, and civil rights violations he was experiencing and seeking intervention, investigation, and relief.

**132.** Plaintiff filed a formal written complaint with the Queens County District Attorney's Office, describing the pattern of coordinated harassment, road targeting, sidewalk harassment, defamatory messages, slander, and the systematic refusal of NYPD officers to take his complaints. Plaintiff provided the Queens DA with specific factual information about the incidents he had experienced, including dates, locations, descriptions of vehicles, and descriptions of the individuals involved. Plaintiff sought the Queens DA's intervention, investigation, and prosecution of the responsible parties.

**133.** Plaintiff filed a formal written complaint with the Police Commissioner of the City of New York, describing the pattern of coordinated harassment and the systematic refusal of NYPD officers to take his complaints. Plaintiff provided the Police Commissioner with specific factual information about his numerous visits to NYPD precincts and calls to 911, the names of the precincts he visited, and the dates and approximate times of his visits. Plaintiff sought the Police Commissioner's intervention, investigation of the officers who refused his complaints, and direction that NYPD officers properly document and investigate Plaintiff's reports.

**134.** Plaintiff filed a formal written complaint with the United States Department of Justice, Civil Rights Division, describing the pattern of coordinated harassment, the NYPD's systematic refusal to take his complaints, and his belief that the harassment was motivated in part by discriminatory animus based on his South Asian national origin, race, and color. Plaintiff sought the DOJ's intervention,

investigation, and civil rights enforcement action on his behalf, and requested that the DOJ conduct an investigation of the NYPD's practices with respect to complaints filed by persons of South Asian origin and other minority groups.

**135.** Plaintiff filed a formal written complaint with the New York State Attorney General's Office, describing the pattern of harassment and the NYPD's refusal to take his complaints. The Attorney General of the State of New York has authority to investigate civil rights violations by law enforcement agencies and to bring civil enforcement actions under the New York State Human Rights Law and other applicable statutes. Plaintiff sought the Attorney General's intervention and investigation and requested that the Attorney General commence appropriate proceedings against the City of New York and the NYPD for their unconstitutional treatment of Plaintiff.

**136.** Plaintiff filed a formal written complaint with the Office of the Governor of New York State, describing the pattern of harassment and the NYPD's unconstitutional conduct. Plaintiff sought the Governor's intervention and direction to relevant state agencies and officials to investigate and address the civil rights violations he was experiencing. Plaintiff explained that he had sought relief from multiple governmental authorities without success and that the harassment was continuing and intensifying.

**137.** In addition to the authorities identified in paragraphs 132 through 136 herein, Plaintiff also filed complaints with other federal, state, and local agencies, oversight bodies, and elected officials, seeking intervention, investigation, and relief. The full list of all governmental authorities to which Plaintiff submitted

complaints will be set forth in a schedule to be attached as an exhibit to this Complaint, and copies of all such complaints are incorporated herein by reference.

**138.** Each of the formal written complaints filed by Plaintiff with governmental authorities described in paragraphs 132 through 137 herein constitutes the exercise of Plaintiff's constitutionally protected right to petition government for redress of grievances under the First Amendment to the United States Constitution. The right to petition government for redress of grievances is among the most fundamental rights secured by the Constitution, and any governmental action taken in retaliation for the exercise of that right is unconstitutional. See Hartman v. Moore, 547 U.S. 250 (2006); BE&K Constr. Co. v. NLRB, 536 U.S. 516 (2002).

**139.** After each formal written complaint filed by Plaintiff with a governmental authority, the harassment directed at Plaintiff intensified rather than ceased or diminished. The escalation of harassment following each complaint filing was significant, noticeable, and clearly connected in time to the filing of the complaint. This temporal correlation between Plaintiff's complaint filings and the escalation of harassment constitutes direct circumstantial evidence of a retaliatory motive on the part of those directing, conducting, or encouraging the harassment against Plaintiff. See Crawford-El v. Britton, 523 U.S. 574 (1998).

**140.** The pattern of escalation following each of Plaintiff's complaint filings is explicable only on the theory of retaliation. There is no non-retaliatory explanation for the fact that the harassment directed at Plaintiff consistently increased in intensity immediately following each complaint filing with a governmental authority. The harassment was not driven by any change in Plaintiff's behavior or

circumstances other than his filing of complaints. The inference of retaliatory motivation is overwhelming and, Plaintiff submits, will be confirmed through the discovery of communications among Defendants and their agents and co-conspirators. See Hartman v. Moore, 547 U.S. 250 (2006).

**141.** First Amendment retaliation claims require Plaintiff to establish: (1) that he engaged in constitutionally protected activity; (2) that the defendant caused plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the protected activity was a motivating or substantial factor in the defendant's decision to take the adverse action. See Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001). All three elements are readily satisfied here: Plaintiff filed formal complaints (protected activity); the escalation of harassment chilled and deterred Plaintiff's exercise of his First Amendment rights (injury); and the temporal correlation and absence of any other plausible explanation establish retaliatory motivation (causal connection).

**142.** The escalation of harassment following Plaintiff's complaint filings caused him severe additional harm, both in terms of the increased intensity of the harassment itself and in terms of the compounded emotional distress of knowing that seeking official help made things worse. This "chilling" dynamic—where exercising one's constitutional rights causes one to suffer greater harm—is among the most pernicious forms of civil rights violation, because it operates to deter victims from seeking justice. Plaintiff's determination to continue filing complaints despite repeated retaliatory escalation demonstrates extraordinary personal courage and commitment to the rule of law.

**143.** The retaliatory escalation of harassment following Plaintiff's complaint filings further demonstrates the existence of a coordinated conspiracy involving persons with access to information about Plaintiff's complaint filings—a capacity that ordinary private citizens would not possess absent a connection to law enforcement or governmental intelligence resources. The fact that harassment escalated specifically and consistently after each complaint filing, rather than being constant or random, evidences that persons with inside knowledge of Plaintiff's complaints were directing or triggering the escalation. See Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

**144.** The civil rights conspiracy alleged herein, which includes the retaliatory escalation of harassment following each of Plaintiff's complaint filings, is actionable under 42 U.S.C. § 1985(3). Section 1985(3) provides a cause of action against two or more persons who conspire to deprive a person of equal protection of the laws, if the conspiracy is motivated by racial or class-based animus. The conspiracy alleged herein meets all elements of § 1985(3): there were two or more conspirators; they conspired to deprive Plaintiff of equal protection; the conspiracy was motivated by animus based on Plaintiff's South Asian national origin; and the conspiracy caused Plaintiff injury. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

**145.** In addition to those defendants who actively participated in the conspiracy, defendants who knew of the conspiracy, had the power to prevent its continuance or the commission of further violations, and neglected or refused to prevent those violations are liable under 42 U.S.C. § 1986. This provision imposes liability on those who are aware of a § 1985 conspiracy and fail to prevent it. The Police

Commissioner, supervisory NYPD officers, and other governmental defendants who were informed of the conspiracy by Plaintiff's complaints and who failed to investigate or prevent further violations are liable under § 1986. See 42 U.S.C. § 1986.

**146.** Defendants who received Plaintiff's formal complaints—including the Queens DA, the Police Commissioner, the DOJ, the NYPD investigators who reviewed the complaints, and any other officials—had an obligation under § 1986 and under the First and Fourteenth Amendments to take meaningful action to investigate and address the constitutional violations described in those complaints. Their failure to take such action, in the face of Plaintiff's specific and detailed reports of ongoing constitutional violations, constitutes deliberate indifference actionable under § 1983 and § 1986. See City of Canton, 489 U.S. 378 (1989).

**147.** The failure of governmental defendants to respond to Plaintiff's complaints with meaningful investigation and action was itself a violation of Plaintiff's constitutional rights. Plaintiff has a First Amendment right not only to file complaints with government officials but to have those complaints received and considered in good faith. The systematic dismissal of Plaintiff's complaints without investigation, combined with the subsequent retaliatory escalation of harassment, constitutes a violation of both the First Amendment right to petition and the Fourteenth Amendment right to equal protection and due process. See Hartman v. Moore, 547 U.S. 250 (2006).

**148.** As a direct and proximate result of the retaliatory escalation of harassment following each of Plaintiff's complaint filings, Plaintiff suffered additional harm in

the form of increased physical danger from escalating road harassment; intensified emotional distress, anxiety, and fear; additional damage to his professional reputation and business relationships; and additional loss of earnings and earning capacity. Plaintiff is entitled to compensatory damages for all harm caused by the retaliatory escalation of harassment in addition to the harm caused by the underlying original harassment.

**149.** The retaliatory conduct alleged herein was motivated by evil motive, malice, and reckless or callous indifference to Plaintiff's federally protected rights, within the meaning of Smith v. Wade, 461 U.S. 30 (1983). Accordingly, Plaintiff is entitled to punitive damages against each individual defendant whose conduct was motivated by evil motive or reckless indifference, in an amount to be determined at trial, to punish the wrongdoers and deter future violations of a similar character.

**150.** The totality of Defendants' responses to Plaintiff's complaints—consistent refusal by NYPD to take complaints, failure to investigate by the assigned investigator, non-response or perfunctory responses by the Queens DA, the Police Commissioner, the DOJ, the Attorney General, and the Governor, and retaliatory escalation of harassment after each filing—demonstrates the systemic nature of the violations and the systemic failure of governmental institutions to protect Plaintiff's constitutional rights. This systemic failure is itself evidence of a municipal policy and custom of denying civil rights protections to Plaintiff. See Monell, 436 U.S. 658 (1978).

**151.** Plaintiff will produce in discovery copies of all formal written complaints filed with governmental authorities, together with all responses (or records of non-

response) received from those authorities. These documents will establish the protected nature of Plaintiff's complaint-filing activity, the governmental authorities' awareness of the violations alleged herein, and the temporal connection between each complaint filing and the subsequent escalation of harassment, confirming the retaliatory character of the escalations.

**152.** The filing of formal written complaints with governmental authorities by Plaintiff was not merely a private act of self-help but was a deliberate and good-faith exercise of Plaintiff's constitutional rights, motivated by Plaintiff's belief in the rule of law and his trust that governmental institutions would perform their constitutional obligations. The systematic failure of those institutions to respond to Plaintiff's appeals—and the retaliatory escalation of harassment that followed each appeal—represents a profound betrayal of the constitutional compact between the government and the governed. Plaintiff files this Complaint to hold Defendants accountable and to vindicate the constitutional rights of all persons in similar circumstances.

**153.** The communications by which Plaintiff's complaint filings became known to those directing the retaliatory escalation of harassment will be the subject of targeted discovery requests, including subpoenas for communications among NYPD officers, subpoenas for communications between NYPD officers and private individuals, and discovery of records of any formal or informal notifications provided to NYPD or other city agencies when complaints about NYPD conduct were filed with external bodies such as the DOJ or the Attorney General. Plaintiff is

confident that this discovery will reveal the mechanism by which his complaint filings triggered retaliatory escalations.

**154.** Among the complaints filed by Plaintiff with governmental authorities, each complaint specifically described the systematic refusal of NYPD officers to take Plaintiff's reports of harassment and civil rights violations. By filing these complaints, Plaintiff brought to the attention of the relevant authorities the unconstitutional conduct of NYPD officers. Those authorities were therefore specifically aware of NYPD officers' unconstitutional conduct and had both the authority and the obligation to take action to remedy that conduct. Their failure to do so constitutes acquiescence in and approval of that conduct, and renders them liable under 42 U.S.C. §§ 1983 and 1986.

**155.** Plaintiff specifically notes that the complaints filed with the United States Department of Justice, Civil Rights Division, placed federal officials on direct notice of the federal constitutional violations being perpetrated against Plaintiff by the NYPD and by private actors working in concert with or at the direction of state actors. The DOJ's failure to investigate or take action in response to Plaintiff's complaints, and the subsequent retaliatory escalation of harassment, constitute violations of Plaintiff's First Amendment right to petition and of the DOJ's obligations under federal law. To the extent any federal officials participated in or facilitated the harassment of Plaintiff, claims against them are governed by Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

**156.** Plaintiff additionally notes that the complaints filed with the Police Commissioner of the City of New York placed the final policymaking authority of

the NYPD on direct notice of the unconstitutional conduct of NYPD officers toward Plaintiff. The Police Commissioner's failure to investigate or take action in response to these complaints, and the subsequent retaliatory escalation of harassment, constitute deliberate indifference at the highest level of NYPD command and render the Police Commissioner personally liable under 42 U.S.C. § 1983 in both his/her individual and official capacities. See Pembaur, 475 U.S. 469 (1986).

**157.** The escalation of harassment following Plaintiff's complaint filings is not merely relevant evidence—it is itself an independent constitutional violation. Retaliation against a person for exercising his First Amendment rights is an unconstitutional act regardless of the form the retaliation takes. When the retaliation takes the form of escalating physical danger, defamation, and coordinated harassment, it constitutes one of the most severe forms of First Amendment retaliation imaginable and warrants the full range of remedies available under 42 U.S.C. §§ 1983, 1985, and 1986, including compensatory damages, punitive damages, declaratory relief, and injunctive relief. See Smith v. Wade, 461 U.S. 30 (1983).

**158.** Plaintiff intends to seek through discovery all communications among NYPD officers, NYPD supervisors, and the Police Commissioner relating to Plaintiff's complaints, and all internal records of how those complaints were handled. Plaintiff further intends to seek through discovery all records of communications between NYPD officers and private individuals—including any Doe Private Individual Defendants—to establish the connection between NYPD personnel and the retaliatory escalation of harassment following each of Plaintiff's complaint filings.

These discovery requests will be served pursuant to the Federal Rules of Civil Procedure.

**159.** Plaintiff's repeated filing of complaints with governmental authorities, despite the retaliatory escalation of harassment that followed each filing, demonstrates Plaintiff's extraordinary commitment to seeking justice through lawful means and his refusal to be silenced or deterred by unlawful retaliation. This persistence in the exercise of protected constitutional rights in the face of retaliatory government conduct is precisely the behavior that the First Amendment and the civil rights statutes were designed to protect and encourage. Plaintiff commends this course of conduct to the Court as evidence of his good faith and his sincere commitment to pursuing justice through proper legal channels.

**160.** As a direct and proximate result of the retaliatory escalation of harassment following each of Plaintiff's complaint filings with governmental authorities, and as a direct and proximate result of the failure of all governmental authorities to provide meaningful investigation, relief, or protection in response to those complaints, Plaintiff has suffered all of the harms described herein, including physical harm, emotional distress, professional damage, and economic loss. Defendants are jointly and severally liable for all such harms. Plaintiff demands judgment against all Defendants for compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees, and all other relief set forth in the Prayer for Relief herein.

D. The May 13, 2025 Motor Vehicle Collision as Part of the Pattern(Paragraphs 161–185)

**161.** On May 13, 2025, Plaintiff Raj Thakur was involved in a motor vehicle collision in Queens, New York. The collision was caused by the defendant identified herein as OLAMILEKAN BABATUNDE SIKIRU, Driver, who operated a motor vehicle that struck Plaintiff's vehicle under circumstances that, evaluated in the context of the ten-year pattern of targeting and harassment directed at Plaintiff, raise significant questions about whether the collision was accidental or was, at least in part, a deliberate act directed at Plaintiff.

**162.** This Court must clearly understand and the record must clearly reflect: the May 13, 2025 motor vehicle collision is presented herein solely in the context of the broader ten-year pattern of targeting and civil rights violations directed at Plaintiff. This is not a car accident case. This is a ten-year federal civil rights pattern case, of which the May 13, 2025 collision is one component. All motor vehicle negligence claims, all insurance claims, and all SUM (Supplementary Underinsured Motorist) claims against Erie Insurance Company arising from the May 13, 2025 collision will be prosecuted exclusively and separately in New York State Court, in a separate state court action, and are not part of this federal civil rights action.

**163.** The Driver who caused the May 13, 2025 collision was not insured as required by New York law. At the scene of the collision, the Driver presented a false insurance card that bore multiple drivers' names and it was registered in Texas State, despite the fact that the vehicle was operating in New York. The presentation of a false insurance card is a criminal offense under New York law. The discovery of

this false insurance card at the scene of a collision in Queens—in the context of the decade-long pattern of targeting Plaintiff for harassment—is itself a significant circumstance that is highly relevant to Plaintiff's civil rights claims.

**164.** Plaintiff avers that the circumstances of the May 13, 2025 collision are consistent with the pattern of coordinated targeting that Plaintiff has experienced over the preceding ten years. Specifically: the collision occurred in the geographic area where Plaintiff has been repeatedly targeted for road harassment; the driver's possession and presentation of a false insurance card suggests premeditation or coordination with others; the driver was operating a vehicle with Texas registration in Queens, New York; and the collision was of a type—involving another vehicle striking Plaintiff's vehicle—that is consistent with the patterns of dangerous vehicle behavior Plaintiff has experienced throughout the ten-year harassment campaign.

**165.** Plaintiff will seek through discovery in this action all information about the Driver's identity, background, associates, and prior activities, including any connections between the Driver and the Private Individual Doe Defendants named herein, and any connections between the John Doe Driver and any NYPD officers or other governmental actors. Plaintiff is specifically seeking to determine whether the May 13, 2025 collision was orchestrated or facilitated as part of the conspiracy against Plaintiff. All such discovery will be sought pursuant to the Federal Rules of Civil Procedure.

**166.** Plaintiff avers that the insurance records associated with the vehicle involved in the May 13, 2025 collision, and the history of that vehicle's operation and ownership, may reveal connections to the broader conspiracy against Plaintiff.

Plaintiff will seek through discovery all vehicle registration records, insurance records, prior incident reports, and other records relating to the vehicle or vehicles involved in the May 13, 2025 collision. Plaintiff will further seek all records relating to the identity and background of the Driver, including any prior criminal history, prior traffic violations, and any prior contacts with NYPD.

**167.** The NYPD officers who responded to the scene of the May 13, 2025 collision—identified herein as some of the John/Jane Doe NYPD Officers—failed to properly investigate and document the collision. Specifically, the accident-scene officers failed to properly document and investigate the John Doe Driver's false insurance card; failed to issue the appropriate summonses and citations for the uninsured operation of a motor vehicle and the possession and presentation of a false insurance card; failed to thoroughly investigate the suspicious circumstances surrounding the collision; and failed to document Plaintiff's specific concerns about the connection between the collision and the broader pattern of targeting he had been experiencing.

**168.** The accident-scene NYPD officers' failure to properly investigate and document the May 13, 2025 collision, and specifically their failure to take appropriate action regarding the John Doe Driver's false insurance card, is consistent with and continuous with the broader pattern of NYPD deliberate indifference to Plaintiff's civil rights complaints over the preceding ten years. This failure is not an isolated incident of police negligence; it is another episode in the pattern of systematic NYPD denial of official police services to Plaintiff, actionable under 42 U.S.C. § 1983 and Monell, 436 U.S. 658 (1978).

**169.** Plaintiff suffered physical injuries as a result of the May 13, 2025 collision. The nature and extent of Plaintiff's physical injuries from the collision will be documented through medical records, which will be produced in discovery. While the compensatory damage claims for physical injury from the collision are asserted herein as part of the overall pattern of civil rights violations, Plaintiff specifically reserves all separate and independent claims for personal injury damages arising from the collision for the separate state court action to be filed against the Driver and other appropriate defendants in New York State Court.

**170.** Erie Insurance Company, which provides Supplementary Underinsured Motorist (SUM) coverage to Plaintiff, may not seek subrogation, indemnification, or any reimbursement from Plaintiff in connection with any settlement or payment arising from the May 13, 2025 collision. Plaintiff's total damages—including compensatory damages for physical injury, emotional distress, loss of earnings, professional damage, and all other harms arising from the ten-year civil rights campaign described herein—far exceed any sum that Erie Insurance Company may pay to Plaintiff or on Plaintiff's behalf in connection with the May 13, 2025 collision. Erie Insurance's subrogation rights, if any, do not extend to the civil rights damages sought in this federal action.

**171.** The Driver named as a defendant herein is included in this federal civil rights action to the extent that his conduct in causing the May 13, 2025 collision was connected to the civil rights conspiracy directed against Plaintiff. If discovery reveals that the Driver was acting in concert with, at the direction of, or with the encouragement of state actors or Private Individual co-conspirators in causing the

collision, then his conduct constitutes an act performed under color of state law within the meaning of 42 U.S.C. § 1983. See Dennis v. Sparks, 449 U.S. 24 (1980); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

**174.** The use of a vehicle bearing false insurance documentation in the collision is a significant factual circumstance that deserves thorough investigation. Plaintiff believes that the false insurance card presented by the Driver—which appeared to list multiple drivers on a single policy with Texas State —was not an innocent error but was a deliberate attempt to obscure the identity of the responsible party and to impede Plaintiff's ability to obtain compensation and documentation of the incident. This attempt to obstruct documentation is consistent with the broader pattern of making Plaintiff's civil rights claims impossible to document. See 42 U.S.C. § 1985(2).

**175.** Plaintiff will seek through discovery all police records relating to the May 13, 2025 collision, including: the accident report prepared by NYPD accident-scene officers; all 911 communications records relating to the collision; all records of any NYPD investigation of the false insurance card presented by the Driver; and all records of any summonses or citations issued in connection with the collision. Plaintiff anticipates that the police records of the May 13, 2025 collision will be consistent with the pattern of under-investigation and under-documentation that characterizes NYPD's treatment of Plaintiff's complaints throughout the ten-year period.

**176.** Plaintiff additionally notes that the May 13, 2025 collision occurred in the context of a period of heightened tension and escalated harassment, which itself

followed one of Plaintiff's recent complaint filings with a governmental authority. The timing of the collision—occurring during a period of escalated, post-complaint harassment—is consistent with and supports the inference that the collision was a retaliatory act directed at Plaintiff in response to his complaint-filing activity. Plaintiff will seek to establish this connection through discovery. See Hartman v. Moore, 547 U.S. 250 (2006).

**177.** The physical injuries suffered by Plaintiff in the May 13, 2025 collision are part of the overall physical harm that Plaintiff has suffered as a result of the ten-year campaign of targeting and harassment directed at him. These physical injuries compound and interact with the psychological, professional, and economic harms Plaintiff has suffered from the broader campaign. The collision was not merely a traffic incident; it was an episode of physical harm inflicted on Plaintiff in the context of a pattern of civil rights violations and, Plaintiff contends, may have been an act of deliberate physical harm. All of Plaintiff's injuries are compensable in this action.

**178.** Plaintiff further notes that the May 13, 2025 collision illustrates the concrete and serious danger of physical harm to which he has been and continues to be exposed as a result of the targeting and harassment campaign directed at him. The road harassment described in paragraphs 60 through 65 herein—tailgating, intentional slowing, wrong-way incursions, stop-sign running, and sudden U-turns—all created dangerous conditions that could have resulted in a motor vehicle collision at any time during the ten-year period. The May 13, 2025 collision demonstrates that this danger was real and was eventually realized. The NYPD's

failure to address Plaintiff's repeated complaints about road harassment was a proximate cause of the eventual physical injury Plaintiff suffered in the collision.

**179.** As a consequence of the May 13, 2025 collision and the physical injuries suffered therein, Plaintiff has incurred medical expenses, suffered pain and suffering, experienced lost wages and diminished earning capacity, and continues to suffer the physical and psychological effects of the collision. These damages are compensable in this action to the extent they arise from the civil rights violations alleged herein, and will also be fully compensable in the separate state court action to be filed against the John Doe Driver and other appropriate defendants.

**180.** The NYPD accident-scene officers who failed to properly document and investigate the May 13, 2025 collision are liable under 42 U.S.C. § 1983 for their deliberate indifference to Plaintiff's civil rights complaints and to the suspicious circumstances of the collision. These officers are additionally liable for their failure to take appropriate law enforcement action in connection with the Driver's possession and presentation of a false insurance card, which constitutes a criminal offense under New York law. Their failure to act is consistent with the broader NYPD pattern of deliberate indifference to Plaintiff's rights and constitutes an independent violation of 42 U.S.C. § 1983.

**181.** Plaintiff specifically reserves the right to seek discovery of all communications, records, and documents relating to the May 13, 2025 collision in this federal action, notwithstanding the fact that a separate state court action will also be filed relating to the collision. Discovery obtained in this federal action may be used in the separate state court action to the extent permitted by applicable

law. Plaintiff specifically intends to seek in this action all NYPD records, accident scene photographs, traffic camera footage, witness statements, and other documentation relating to the May 13, 2025 collision.

**182.** Plaintiff notes for the Court's attention that the false insurance card presented by the Driver creates a factual circumstance analogous to the broader pattern of false or misleading documentation that has characterized the targeting of Plaintiff throughout the ten-year period. Just as the harassers have attempted to obscure their identities through the use of untraceable or otherwise difficult-to-document methods of harassment, the Driver attempted to obscure his true identity and insurance status through the use of a false insurance card. This consistency of method is itself evidence of coordination and planning among participants in the conspiracy against Plaintiff.

**183.** The John Doe Driver's identity will be sought through discovery in this action, including through: subpoenas to the New York State Department of Motor Vehicles for records of the vehicle involved in the collision; subpoenas to the Texas Department of Motor Vehicles for records of the vehicle's Texas registration; subpoenas to all insurance companies named or referenced in the false insurance card presented at the scene; subpoenas to any witnesses present at the scene of the collision; and any and all other discovery methods available under the Federal Rules of Civil Procedure.

**184.** Plaintiff specifically notes that in addition to the civil claims asserted herein, the conduct of the Driver in causing the collision and in presenting a false insurance card may constitute criminal conduct under New York law. Plaintiff has reported

and will continue to report all relevant criminal conduct to the appropriate law enforcement authorities and prosecutorial bodies, notwithstanding the failure of those authorities to take adequate action in response to Plaintiff's previous complaints. Plaintiff reserves the right to supplement this Complaint based on any actions taken or not taken by law enforcement authorities in response to these reports.

**185.** In summary, the May 13, 2025 motor vehicle collision is one component of a broader civil rights pattern case. The collision resulted in physical harm to Plaintiff, demonstrated the concrete physical danger to which Plaintiff has been exposed throughout the ten-year targeting campaign, was inadequately investigated and documented by NYPD accident-scene officers consistent with the broader pattern of NYPD deliberate indifference to Plaintiff's rights, and may have been a deliberate act perpetrated in furtherance of the civil rights conspiracy directed at Plaintiff. Plaintiff seeks all appropriate relief related to this incident as part of the broader civil rights case, while reserving all motor vehicle negligence and SUM claims for separate state court prosecution.

E. Municipal Policy, Custom, and Failure to Train(Paragraphs 186–200)

**186.** The City of New York, acting through its authorized policymakers, including the Police Commissioner, maintains and has maintained throughout the period relevant to this Complaint a policy, custom, and practice of discouraging, dismissing, and refusing to properly process civilian complaints of harassment, targeting, and civil rights violations, particularly complaints filed by persons of South Asian and other minority national origins. This policy, custom, and practice

is actionable under 42 U.S.C. § 1983 as a municipal policy causing constitutional deprivations. See Monell v. Dep't of Social Services, 436 U.S. 658 (1978).

**187.** The NYPD's policy, custom, and practice of discouraging or refusing civilian complaint reports—evidenced by the systematic refusal of multiple officers at multiple precincts to take Plaintiff's complaints over a period of ten years—constitutes a municipal custom actionable under 42 U.S.C. § 1983. A custom need not be formally adopted or written into official NYPD policy to be actionable under Monell; it is sufficient that the custom was "so permanent and well-settled as to constitute a custom or usage with the force of law." See Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68 (1970). The ten-year consistent pattern of refusal alleged herein plainly satisfies this standard.

**188.** The City of New York additionally failed to adequately train NYPD officers to properly receive, document, and investigate civilian complaints of coordinated harassment and civil rights violations. This failure to train constitutes deliberate indifference to the constitutional rights of persons such as Plaintiff, who are the obvious potential victims of the type of coordinated harassment that Plaintiff has experienced. See City of Canton v. Harris, 489 U.S. 378 (1989). The need to train officers to recognize and respond to coordinated civilian harassment was obvious and apparent, and the failure to provide such training was itself tantamount to a policy decision to deprive persons in Plaintiff's position of constitutional protections.

**189.** In City of Canton v. Harris, 489 U.S. 378, 390 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983

liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." The Court further held that where the city was on notice that a particular type of constitutional violation was likely to occur as a result of inadequate training, the city's failure to remedy that inadequacy constitutes deliberate indifference. Here, Plaintiff's repeated complaints placed the NYPD and the City on clear notice that officers lacked adequate training to receive and document civilian harassment complaints, and the NYPD's failure to provide that training constitutes deliberate indifference under City of Canton.

**190.** The City of New York additionally failed to adequately supervise NYPD officers to ensure that they complied with their obligations to receive, document, and investigate civilian complaints. The failure to supervise—like the failure to train—constitutes deliberate indifference to the rights of civilians when the need for supervision is obvious and the failure to supervise is causally connected to the constitutional violations suffered by the plaintiff. See Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004). The consistent refusal of multiple NYPD officers to take Plaintiff's complaints over ten years is strong evidence of inadequate supervision.

**191.** The Police Commissioner of the City of New York, as the final policymaking authority for the NYPD, bears personal responsibility for the NYPD's unconstitutional policies, customs, and practices. A single decision by a final policymaking authority constitutes a municipal policy for purposes of Monell liability. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). As the final

policymaker for the NYPD, the Police Commissioner's failure to take any action in response to Plaintiff's formal complaints about NYPD officers' refusal to take his reports constitutes a final policy decision that the NYPD would continue to deny Plaintiff police services, and renders the City directly liable for all constitutional violations resulting from that decision.

**192.** The failure of the NYPD to investigate or take any action in response to Plaintiff's formal written complaints—including the complaint specifically reviewed by an NYPD investigator who mishandled the investigation—further establishes the existence of a municipal custom of non-response and non-accountability for constitutional violations directed at civilians. Where a municipal agency systematically fails to investigate or discipline officers who violate civilians' constitutional rights, that failure to investigate and discipline constitutes a de facto policy of condoning those violations. See Fiacco v. City of Rensselaer, 783 F.2d 319 (2d Cir. 1986).

**193.** Discovery in this action will reveal the full scope of NYPD policies, training practices, and supervisory mechanisms relevant to Plaintiff's claims. Specifically, Plaintiff will seek through discovery: all NYPD policies, procedures, and training materials relating to the receipt, documentation, and investigation of civilian harassment complaints; all NYPD disciplinary records relating to officers who refused to take civilian complaints in circumstances similar to those alleged herein; all records of internal NYPD review of civilian complaints regarding NYPD officers assigned to the precincts serving Plaintiff's area of Queens; and all NYPD Internal

Affairs Bureau records relating to complaints about the NYPD officers identified herein.

**194.** Plaintiff anticipates that discovery will reveal that the NYPD's training on civilian complaint intake was deficient in one or more of the following respects: training materials did not adequately address the recognition and documentation of coordinated harassment campaigns; training materials did not adequately address the obligation to take complaints from persons reporting civil rights violations; training materials did not adequately address the prohibition on discriminatory denial of police services; and supervisory review of officer compliance with civilian complaint intake obligations was wholly inadequate or nonexistent. These deficiencies, if confirmed by discovery, will further establish the City's Monell liability.

**195.** Plaintiff additionally asserts that the City of New York maintained a de facto policy of ratifying unconstitutional conduct by NYPD officers when that conduct was directed at civilian complainants of minority national origin. Where a policymaker approves or ratifies a subordinate's unconstitutional actions and the basis for the ratification includes discriminatory motivation, the policymaker's ratification constitutes a formal policy for purposes of Monell liability. See City of St. Louis v. Praprotnik, 485 U.S. 112 (1988). The Police Commissioner's failure to take any action in response to the pattern of NYPD officers refusing Plaintiff's complaints constitutes a ratification of those refusals and renders the City directly liable.

**196.** The pattern of constitutional violations described herein is sufficiently widespread, sustained, and severe to establish that the City of New York was on notice of the constitutional violations being perpetrated against Plaintiff and deliberately chose to take no action to remedy those violations. This deliberate choice, by a municipality that was on notice of ongoing constitutional violations against a specific civilian, constitutes actionable deliberate indifference under Monell and City of Canton. See Vann v. City of New York, 72 F.3d 1040, 1050 (2d Cir. 1995).

**197.** The municipal policy, custom, and practice of failing to take civilian harassment complaints, failing to train officers to receive and document such complaints, and failing to supervise officers to ensure compliance with civilian complaint obligations directly and proximately caused each and every constitutional deprivation suffered by Plaintiff as alleged herein. But for the NYPD's systemic refusal to document and investigate Plaintiff's complaints, the harassment directed at Plaintiff would have been stopped or curtailed years ago, and Plaintiff would not have suffered the years of additional harm that followed the NYPD's refusals. The causal connection between the municipal policy and Plaintiff's harm is direct and unambiguous. See City of Canton, 489 U.S. 378 (1989).

**198.** In addition to compensatory damages, Plaintiff seeks injunctive relief against the City of New York and the NYPD, directing the NYPD to revise its policies, training, and supervisory practices with respect to civilian complaint intake to ensure that all future complaints filed by Plaintiff—and by other similarly situated civilians—are received, documented, and investigated as required by law and the

Constitution. Such institutional reform is necessary to prevent the continuation and recurrence of the constitutional violations described herein. See Hutto v. Finney, 437 U.S. 678 (1978) (courts may order institutional reform as part of § 1983 relief).

**199.** Plaintiff is aware that the standard for Monell liability requires a showing of a direct causal link between the municipal policy or custom and the constitutional violation, and that municipalities are not liable under § 1983 on a theory of respondeat superior. See Monell, 436 U.S. 658 (1978). Plaintiff submits that the ten-year pattern of NYPD refusal to take his complaints, combined with the Police Commissioner's non-response to Plaintiff's formal complaints and the absence of any disciplinary action against any of the officers involved, satisfies the direct-causation standard established by Monell and fully supports the imposition of municipal liability on the City of New York.

**200.** Discovery will reveal the full scope of the NYPD's policies and practices relevant to Plaintiff's claims, including through 911 logs, complaint report databases, training records, supervisory review records, disciplinary records, and internal review records. Plaintiff submits that this discovery will powerfully corroborate every aspect of the municipal liability claims asserted herein and will demonstrate that the NYPD's treatment of Plaintiff was not an accident or the result of individual officer discretion, but was the product of a systemic municipal failure to train, supervise, and discipline officers who denied Plaintiff his constitutional rights.

F. Pattern of Surveillance and Private Actor Coordination(Paragraphs 201–210)

**201.** The John/Jane Doe Private Individual Defendants named herein engaged in a systematic, coordinated pattern of harassment that bears the unmistakable hallmarks of organized direction by persons with access to government intelligence and law enforcement resources. The coordination evident in the harassment campaign—its geographic spread across multiple locations, its consistency across multiple participants, its persistence across multiple years, and its apparent knowledge of Plaintiff's movements and schedule—is not consistent with the actions of uncoordinated private individuals acting independently and is consistent only with organized direction by a party or parties with government-level access to information about Plaintiff.

**202.** The consistency and frequency of the road and sidewalk harassment incidents directed at Plaintiff strongly suggests coordination by persons with knowledge of Plaintiff's movements, residence, and routine. Private citizens acting entirely independently of government resources would not have the ability to coordinate the sustained, multi-actor, multi-location harassment campaign directed at Plaintiff over a period of ten years. The evidence strongly suggests the involvement of persons with access to law enforcement databases, surveillance technology, or intelligence resources capable of providing real-time information about Plaintiff's location and movements. See Katz v. United States, 389 U.S. 347 (1967).

**203.** Plaintiff believes, and intends to demonstrate through discovery, that some of the Private Individual Doe Defendants were acting as informants or surrogates

of government actors, including but not limited to NYPD officers, and that their harassment of Plaintiff was directed, organized, and/or encouraged by those government actors. The use of civilian informants or surrogates by law enforcement to target, harass, and surveil private citizens without legal authority constitutes state action within the meaning of 42 U.S.C. § 1983. See Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982); Dennis v. Sparks, 449 U.S. 24 (1980).

**204.** The use of civilian informants or surrogates by law enforcement to harass private citizens without legal authority violates the Fourth Amendment right to be free from unreasonable searches and seizures. The Fourth Amendment's prohibition on unreasonable government intrusion extends to situations where the government uses private parties as its agents to engage in conduct that would be unconstitutional if done directly by the government. See Samson v. California, 547 U.S. 843 (2006); United States v. White, 401 U.S. 745 (1971). The surveillance and harassment of Plaintiff by private actors at the direction of government actors is therefore subject to Fourth Amendment scrutiny and constitutes an unreasonable search and seizure in violation of the Fourth Amendment.

**205.** The surveillance directed at Plaintiff—whatever its precise technical mechanism—was conducted without any lawful warrant, without any legal justification, without Plaintiff's knowledge or consent, and without any judicial, administrative, or legislative authorization. It was conducted for the purpose not of legitimate law enforcement but of harassing, intimidating, targeting, and retaliation against a private citizen for exercising his constitutional rights. Surveillance conducted for such purposes, by or at the direction of government

actors, constitutes a gross violation of the Fourth Amendment to the United States Constitution. See Katz, 389 U.S. 347 (1967).

**206.** The coordination among the Private Individual Doe Defendants and between those defendants and government actors establishes the existence of a conspiracy within the meaning of 42 U.S.C. § 1985(3). In order to satisfy the conspiracy requirement of § 1985(3), a plaintiff must allege that the conspirators reached an agreement to deprive the plaintiff of constitutional rights. See Griffin v. Breckenridge, 403 U.S. 88 (1971). Here, the sustained, coordinated nature of the harassment campaign directed at Plaintiff over a period of ten years constitutes compelling evidence of an agreement, formal or informal, to deprive Plaintiff of his constitutional rights. Plaintiff will seek to establish the existence and terms of this agreement through discovery.

**207.** The private actors who participated in the harassment of Plaintiff are liable as co-conspirators with the government actors who directed or encouraged their conduct. Under the doctrine established in Dennis v. Sparks, 449 U.S. 24 (1980), a private person who conspires with a government official to deprive another of constitutional rights acts under color of state law and is subject to § 1983 liability. Similarly, under Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), a conspiracy between a private person and a state actor to deprive a third person of his constitutional rights satisfies the color-of-law requirement of § 1983 for all conspirators, government and private alike.

**208.** Plaintiff will seek through discovery to establish the full extent of the coordination between the Private Individual Doe Defendants and the government

actor defendants. Specifically, Plaintiff will seek: records of any payments, compensation, or consideration provided by government actors to private individuals in connection with the surveillance or harassment of Plaintiff; records of any informant or cooperating individual agreements between NYPD officers and any Private Individual Doe Defendants; records of any communications between NYPD officers and Private Individual Doe Defendants; and records of any law enforcement databases or resources accessed in connection with monitoring Plaintiff's movements or activities.

**209.** The coordination between private actors and government actors in targeting Plaintiff constitutes a particularly egregious form of civil rights violation because it leverages the resources and authority of government to target a private citizen while attempting to conceal the government's involvement behind the activities of nominally private parties. This concealment makes it extraordinarily difficult for the targeted individual to document the violations, seek judicial relief, or identify the responsible parties. It is precisely this type of covert governmental targeting of private citizens that the civil rights statutes—enacted in the aftermath of Reconstruction-era violence conducted by private actors in concert with state officials—were designed to address and remedy. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

**210.** Plaintiff submits that the evidence developed through discovery will reveal the full scope of the conspiracy between private actors and government actors directed against him, will identify the specific individuals who directed, organized, and conducted the surveillance and harassment campaign, and will establish all

elements of the § 1983 and § 1985 claims asserted herein. Plaintiff respectfully requests that this Court permit broad and searching discovery, including discovery of electronically stored information and law enforcement databases, to expose the full scope of the constitutional violations described in this Complaint and to bring full accountability to all who participated in the decade-long campaign against Plaintiff Raj Thakur.

---

## CAUSES OF ACTION

### COUNT I

### 42 U.S.C. § 1983: Deprivation of Civil Rights Under Color of State Law(Against All Defendants)

**231.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**232.** At all times relevant to this Complaint, Defendant NYPD officers acted under color of state law within the meaning of 42 U.S.C. § 1983. Each individual NYPD officer who refused to take Plaintiff's complaints, who failed to properly investigate the May 13, 2025 collision, and who mishandled Plaintiff's formal complaint acted under color of the authority, badge, and office of the New York City Police Department. See Monroe v. Pape, 365 U.S. 167 (1961).

**233.** Defendant NYPD officers, acting under color of state law, denied Plaintiff police services to which he was constitutionally entitled by refusing to accept, document, or investigate his complaints of harassment, targeting, surveillance, and civil rights violations over a period of approximately ten years. This denial of police services deprived Plaintiff of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

**234.** Defendant NYPD officers, acting under color of state law, participated in or acquiesced to a campaign of harassment, surveillance, and targeting directed against Plaintiff, by encouraging, condoning, or acquiescing in the activities of the Private Individual Doe Defendants. This participation, acquiescence, and encouragement deprived Plaintiff of his rights under the First, Fourth, Fifth, and Fourteenth Amendments, in violation of 42 U.S.C. § 1983. See Okin, 577 F.3d 415 (2d Cir. 2009).

**235.** Defendant Private Individual Doe Defendants, acting in concert with and at the direction or encouragement of government actor defendants, acted under color of state law within the meaning of 42 U.S.C. § 1983, and participated in the deprivation of Plaintiff's constitutional rights through their coordinated road harassment, sidewalk harassment, defamatory messages, and slander. See Dennis v. Sparks, 449 U.S. 24 (1980); Adickes, 398 U.S. 144 (1970).

**236.** Defendants City of New York and the Police Commissioner, as the final policymaking authority for the NYPD, are liable under 42 U.S.C. § 1983 and Monell, 436 U.S. 658 (1978), for the unconstitutional policies, customs, and practices of the NYPD that caused and continue to cause the deprivation of Plaintiff's constitutional

rights. The City's failure to train officers to receive civilian complaints and its failure to supervise officers to ensure compliance with their constitutional obligations constitute deliberate indifference actionable under City of Canton, 489 U.S. 378 (1989).

**237.** As a direct and proximate result of the foregoing constitutional violations, Plaintiff has suffered all of the physical, psychological, professional, and economic harms described in this Complaint, in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees under 42 U.S.C. § 1988, costs of suit, and all other appropriate relief.

**238.** The conduct of individual defendant NYPD officers and Private Individual Doe Defendants in violating Plaintiff's constitutional rights was motivated by evil motive, malice, and reckless or callous indifference to Plaintiff's federally protected rights, and therefore warrants an award of punitive damages against each individual defendant in an amount to be determined at trial. See Smith v. Wade, 461 U.S. 30 (1983).

## COUNT II

### 42 U.S.C. § 1983: Equal Protection Violation / Selective Denial of Police Services(Against City of New York, NYPD, and Doe Officers)

**239.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**240.** The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that state actors provide equal protection of the laws and equal police services to all persons within their jurisdiction, regardless of race, national origin, or color, and without irrational discrimination among individuals or classes of individuals.

**241.** Defendants City of New York, NYPD, and John/Jane Doe NYPD Officers denied Plaintiff police services—including the acceptance, documentation, and investigation of his harassment complaints—that are routinely provided to similarly situated persons of different races and national origins. This discriminatory denial of police services was motivated by discriminatory animus based on Plaintiff's South Asian national origin, race, and color, and/or constitutes irrational, class-of-one differential treatment of Plaintiff. See Village of Willowbrook v. Olech, 528 U.S. 562 (2000); Washington v. Davis, 426 U.S. 229 (1976).

**242.** The selective denial of police services to Plaintiff, based on discriminatory motivation or irrational singling out of Plaintiff as an individual, constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment actionable under 42 U.S.C. § 1983. Plaintiff was similarly situated to other civilians who successfully obtained police services from the NYPD, and no legitimate, non-discriminatory reason existed for the dramatically different treatment afforded to Plaintiff. See Village of Willowbrook, 528 U.S. 562 (2000).

**243.** As a direct and proximate result of the foregoing equal protection violations, Plaintiff has suffered all of the physical, psychological, professional, and economic harms described in this Complaint, in an amount to be determined at trial. Plaintiff

is entitled to compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees under 42 U.S.C. § 1988, costs of suit, and all other appropriate relief.

**244.** The conduct of individual defendant NYPD officers in selectively denying police services to Plaintiff on the basis of his race, national origin, and/or color, or on an arbitrary and irrational basis, was motivated by evil motive, malice, discriminatory animus, and/or reckless or callous indifference to Plaintiff's federally protected rights, and warrants an award of punitive damages against each individual defendant in an amount to be determined at trial. See Smith v. Wade, 461 U.S. 30 (1983).

COUNT III

42 U.S.C. § 1983: First Amendment Retaliation(Against All Defendants)

**245.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**246.** Plaintiff engaged in constitutionally protected First Amendment activity by filing formal written complaints with the Queens DA, the Police Commissioner, the United States Department of Justice, the New York State Attorney General, the Governor of New York, and other governmental authorities, in which Plaintiff described the harassment, targeting, surveillance, and civil rights violations he was experiencing and sought official investigation and relief. The right to petition

government for redress of grievances is among the most fundamental rights secured by the First Amendment to the United States Constitution.

**247.** Following each of Plaintiff's protected complaint filings, Defendants and their agents, acting under color of state law and in concert with state actors, retaliated against Plaintiff by escalating the intensity and frequency of the harassment directed at him. This retaliatory escalation of harassment was sufficiently severe to deter a person of ordinary firmness from continuing to exercise his First Amendment rights, and in fact did deter and chill Plaintiff's exercise of his First Amendment rights. See Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001).

**248.** The temporal correlation between each of Plaintiff's complaint filings and the subsequent escalation of harassment establishes that Plaintiff's protected activity was a motivating or substantial factor in the decision of Defendants and their agents to escalate the harassment. No non-retaliatory explanation exists for the consistent pattern of escalation immediately following Plaintiff's complaint filings. See Hartman v. Moore, 547 U.S. 250 (2006); Crawford-El v. Britton, 523 U.S. 574 (1998).

**249.** As a direct and proximate result of the foregoing First Amendment retaliation, Plaintiff has suffered all of the physical, psychological, professional, and economic harms described in this Complaint arising from the escalated harassment following each complaint filing, in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, punitive damages, declaratory relief, injunctive

relief, attorney's fees under 42 U.S.C. § 1988, costs of suit, and all other appropriate relief.

**250.** The conduct of the defendants in retaliating against Plaintiff for exercising his First Amendment rights was motivated by evil motive, malice, and reckless or callous indifference to Plaintiff's federally protected rights, and warrants an award of punitive damages against each individual defendant in an amount to be determined at trial. See Smith v. Wade, 461 U.S. 30 (1983). Such punitive damages are necessary to punish the wrongdoers and to deter future retaliatory conduct against individuals who exercise their constitutional right to petition government for redress of grievances.

COUNT IV

42 U.S.C. § 1983: Fourth Amendment Violation / Unlawful Surveillance(Against All Defendants)

**251.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**252.** Plaintiff was subjected to warrantless surveillance, targeted monitoring of his movements, and coordinated tracking by private actors acting as agents of or in concert with state actors, over a period of approximately ten years, without any lawful warrant, legal justification, judicial authorization, or other lawful basis. This warrantless surveillance violated Plaintiff's reasonable expectation of privacy in his movements, communications, and activities, as protected by the Fourth

Amendment to the United States Constitution. See Katz v. United States, 389 U.S. 347 (1967).

**253.** The Fourth Amendment's protection against unreasonable searches and seizures extends to the long-term warrantless surveillance of a private citizen's movements in public spaces. See United States v. Jones, 565 U.S. 400 (2012). The surveillance directed at Plaintiff—sustained over approximately ten years, involving multiple actors, and evidently relying on government-level intelligence about Plaintiff's movements—constitutes precisely the type of long-term, systematic, warrantless surveillance that the Fourth Amendment prohibits. See Samson v. California, 547 U.S. 843 (2006).

**254.** As a direct and proximate result of the foregoing Fourth Amendment violations, Plaintiff has suffered all of the physical, psychological, professional, and economic harms described in this Complaint arising from the unlawful surveillance, including the loss of privacy, the chilling of Plaintiff's exercise of fundamental rights, and the compounding of all other harms arising from the broader targeting campaign, in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, punitive damages, declaratory relief, injunctive relief, attorney's fees under 42 U.S.C. § 1988, costs of suit, and all other appropriate relief.

**255.** The conduct of the defendants in conducting or directing warrantless surveillance of Plaintiff was motivated by evil motive, malice, and reckless or callous indifference to Plaintiff's federally protected rights under the Fourth Amendment, and warrants an award of punitive damages against each individual

defendant in an amount to be determined at trial. See Smith v. Wade, 461 U.S. 30 (1983).

COUNT V

42 U.S.C. §§ 1985(3) and 1986: Civil Rights Conspiracy(Against All Defendants)

**256.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**257.** Defendants, including the John/Jane Doe NYPD Officers and the John/Jane Doe Private Individuals, acting in concert with one another, conspired to deprive Plaintiff of equal protection of the laws and of equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985(3). The conspiracy was motivated by racial animus and discriminatory intent based on Plaintiff's South Asian national origin, race, and color. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

**258.** In furtherance of the conspiracy, Defendants and their co-conspirators committed numerous overt acts, including: directing and conducting road harassment of Plaintiff; directing and conducting sidewalk harassment of Plaintiff; transmitting defamatory messages to Plaintiff; slandering Plaintiff to persons who know him; refusing to take Plaintiff's complaints of harassment; mishandling the investigation of Plaintiff's formal complaint; and retaliating against Plaintiff by escalating harassment following each of his protected complaint filings with governmental authorities.

**259.** As a direct and proximate result of the civil rights conspiracy described herein, Plaintiff was injured in his person and deprived of his right to equal protection of the laws and of equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985(3). Plaintiff suffered all of the physical, psychological, professional, and economic harms described in this Complaint, in an amount to be determined at trial.

**260.** Those defendants who had knowledge of the conspiracy described herein—including the Police Commissioner, supervisory NYPD officers, and all governmental officials who received Plaintiff's formal complaints—had the power to prevent or aid in preventing the commission of the acts constituting the conspiracy. Despite having such knowledge and power, these defendants neglected and refused to prevent those acts, in violation of 42 U.S.C. § 1986.

**261.** As a direct and proximate result of the § 1986 violations described herein, Plaintiff suffered all of the harm that the conspiracy was able to continue to cause him after the date on which the defendants who knew of the conspiracy had the power to prevent it but neglected or refused to do so. These defendants are jointly and severally liable with the active conspirators for all damages Plaintiff suffered as a result of the continuation of the conspiracy following the date of their knowledge and failure to act.

**262.** The conduct of all defendants in conspiring to deprive Plaintiff of his civil rights and in failing to prevent the continuation of that conspiracy was motivated by evil motive, malice, and reckless or callous indifference to Plaintiff's federally protected rights, and warrants an award of punitive damages against each

individual defendant in an amount to be determined at trial. See Smith v. Wade, 461 U.S. 30 (1983).

## COUNT VI

### Monell Municipal Liability(Against City of New York, NYPD, and Police Commissioner)

**263.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

**264.** Defendant City of New York, acting through its final policymaking authority, the Police Commissioner, established, maintained, and enforced a policy, custom, and practice of discouraging, dismissing, and refusing to properly process civilian complaints of harassment, targeting, surveillance, and civil rights violations. This policy, custom, and practice caused the constitutional deprivations suffered by Plaintiff. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978).

**265.** Defendant City of New York failed to adequately train NYPD officers to recognize, respond to, and document civilian complaints of coordinated harassment and civil rights violations, and to recognize the constitutional obligation to provide equal police services to all civilians regardless of race, national origin, or color. This failure to train constitutes deliberate indifference to the constitutional rights of persons such as Plaintiff and is actionable under 42 U.S.C. § 1983 and City of Canton v. Harris, 489 U.S. 378 (1989).

**266.** The Police Commissioner of the City of New York, as the final policymaking authority for the NYPD, ratified and approved the unconstitutional conduct of NYPD officers in refusing to take Plaintiff's complaints by failing to take any remedial action in response to Plaintiff's formal written complaints specifically describing that unconstitutional conduct. This ratification renders the City of New York directly liable for the resulting constitutional deprivations. See Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

**267.** As a direct and proximate result of the foregoing Monell violations, Plaintiff has suffered all of the physical, psychological, professional, and economic harms described in this Complaint, in an amount to be determined at trial. Plaintiff is entitled to compensatory damages, declaratory relief, injunctive relief, attorney's fees under 42 U.S.C. § 1988, costs of suit, and all other appropriate relief against the City of New York, the NYPD, and the Police Commissioner in his/her official capacity. See Monell, 436 U.S. 658 (1978); City of Canton, 489 U.S. 378 (1989).

COUNT VII

State Law Claims: Negligence, Defamation, Intentional Infliction of Emotional Distress,and Negligent Infliction of Emotional Distress(Against All Defendants, Under Supplemental Jurisdiction)

**268.** Plaintiff hereby repeats, realleges, and incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein. This Court has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. § 1367, as these claims form part of the same case or controversy as Plaintiff's federal claims. The state law claims arise from the same nucleus of operative facts—the ten-year campaign of harassment, surveillance, defamation, and police refusal directed at Plaintiff—as the federal claims asserted in this Complaint.

**269.** Defendants owed Plaintiff a duty of care and a duty not to engage in negligent, reckless, or intentional conduct that would foreseeably cause harm to Plaintiff. Defendants breached these duties by conducting, directing, encouraging, and acquiescing in the sustained campaign of road harassment, sidewalk harassment, defamation, slander, and police refusal directed at Plaintiff. Defendants' conduct constitutes negligence, gross negligence, and recklessness under New York law, and directly and proximately caused all of the harms suffered by Plaintiff. Defendants further engaged in defamation per se by publishing, transmitting, and communicating false statements of fact about Plaintiff to third parties, with knowledge of or reckless disregard for their falsity, causing injury to Plaintiff's professional reputation and personal relationships. See Howell v. New York Post Co., 81 N.Y.2d 115 (1993); Murphy v. American Home Products Corp., 58 N.Y.2d 293 (1983).

**270.** Defendants' sustained campaign of harassment directed at Plaintiff—spanning approximately ten years, involving multiple actors, encompassing road harassment, sidewalk harassment, defamatory messages, slander, police refusal to take complaints, and retaliatory escalation following each of Plaintiff's complaint filings—constitutes conduct so extreme and outrageous, so beyond all reasonable

bounds of decent behavior, as to constitute intentional infliction of emotional distress under New York law. Defendants' conduct was directed at Plaintiff intentionally and/or recklessly, with knowledge that severe emotional distress would result or with reckless disregard of the probability that severe emotional distress would result. As a direct and proximate result, Plaintiff suffered severe emotional distress, anxiety, fear, hypervigilance, and disruption of daily activities, causing actual harm compensable in this action. See Murphy v. American Home Products Corp., 58 N.Y.2d 293 (1983); Howell v. New York Post Co., 81 N.Y.2d 115 (1993).

---

## DAMAGES

**271.** As a direct and proximate result of the constitutional violations, civil rights violations, and state law torts described in this Complaint, Plaintiff Raj Thakur has suffered, continues to suffer, and will in the future suffer, profound and multifaceted harm, for which Defendants are jointly and severally liable. Plaintiff is entitled to the full range of compensatory, punitive, declaratory, and injunctive remedies available under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and under applicable state law, as set forth herein.

**272.** Plaintiff is entitled to compensatory damages for physical injuries sustained as a result of the campaign of targeting and harassment directed at him, including specifically the physical injuries sustained in the May 13, 2025 motor vehicle collision. These physical injuries have caused Plaintiff to suffer pain, discomfort,

medical expense, and temporary and permanent limitations on his physical activities, in an amount to be determined at trial.

**273.** Plaintiff is entitled to compensatory damages for the pain and suffering he has endured throughout the approximately ten-year period of coordinated harassment, targeting, surveillance, and civil rights violations. The pain and suffering caused by ten years of deliberate, sustained targeting—including the constant fear of road harassment, the anxiety of being surveilled without legal justification, and the experience of watching NYPD officers repeatedly refuse to help him—constitutes severe and cognizable harm compensable under federal and state law, in an amount to be determined at trial.

**274.** Plaintiff is entitled to compensatory damages for severe emotional distress, anxiety, fear, hypervigilance, post-traumatic stress, and disruption of daily life activities caused by the ten-year campaign of targeting, surveillance, harassment, and civil rights violations directed at him. Plaintiff's emotional distress is severe, ongoing, and documented, and has materially affected Plaintiff's quality of life, professional activities, and personal relationships, in an amount to be determined at trial.

**275.** Plaintiff is entitled to compensatory damages for the injury to his professional reputation caused by the defamatory messages transmitted to his phone and email and by the slander of Plaintiff to persons who know him personally and professionally. As a licensed real estate broker with more than twelve years of experience, a youth counselor, Nurse Aide/DSP and a member of his Queens community, Plaintiff's professional reputation is a central asset, and its deliberate

and malicious destruction by Defendants has caused and will continue to cause Plaintiff measurable professional harm, in an amount to be determined at trial.

**276.** Plaintiff is entitled to compensatory damages for lost wages and diminished earning capacity during periods when the harassment, targeting, and civil rights violations directed at him prevented or impaired his ability to work as a real estate broker and youth counselor. During periods of intense harassment, physical injury, and emotional distress, Plaintiff was unable to perform his professional duties at full capacity, resulting in actual and calculable economic losses, in an amount to be determined at trial.

**277.** Plaintiff is entitled to compensatory damages for the damage to his personal and professional relationships caused by the slanderous statements made about him to neighbors, friends, acquaintances, and business contacts. These relationships constitute a fundamental component of Plaintiff's personal life and professional success, and their deliberate and malicious destruction by Defendants has caused Plaintiff profound personal harm, including isolation, loss of trust, and loss of professional opportunities, in an amount to be determined at trial.

**278.** Plaintiff is entitled to special damages for all out-of-pocket expenses incurred as a result of the targeting, harassment, and civil rights violations directed at him, including but not limited to: medical and psychological treatment expenses; costs of filing complaints with governmental authorities; costs of seeking legal advice; costs incurred in documenting the harassment; vehicle repair and related expenses arising from the May 13, 2025 collision; and all other out-of-pocket costs

arising from Defendants' unconstitutional conduct, in amounts to be established at trial.

**279.** Plaintiff is entitled to consequential damages for all foreseeable harms flowing from Defendants' unconstitutional conduct, including harms to Plaintiff's future earning capacity, future professional opportunities, future personal relationships, and future quality of life, in an amount to be determined at trial.

**280.** Plaintiff is entitled to punitive damages against each individual defendant, including the John/Jane Doe NYPD Officers, the John/Jane Doe Private Individual Defendants, and the Police Commissioner in his/her individual capacity. The conduct of these defendants in violating Plaintiff's constitutional rights over a period of ten years, in retaliating against him for exercising his First Amendment rights, in conducting warrantless surveillance of his movements, and in participating in a conspiracy to deprive him of his civil rights was motivated by evil motive, malice, and reckless or callous indifference to Plaintiff's federally protected rights. Punitive damages are warranted to punish the wrongdoers and to deter future violations of a similar character. See Smith v. Wade, 461 U.S. 30 (1983). The amount of punitive damages will be determined by the jury based on the nature, duration, and severity of Defendants' conduct.

**281.** Plaintiff is entitled to declaratory relief declaring that Defendants' conduct—as described throughout this Complaint—violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983, 1985, and 1986. Such declaratory relief is necessary to

vindicate Plaintiff's rights and to establish the legal consequences of Defendants' misconduct as a matter of public record. See 28 U.S.C. §§ 2201, 2202.

**282.** Plaintiff is entitled to injunctive relief, including a permanent injunction restraining Defendants, their officers, agents, employees, servants, successors, assigns, and all persons acting in concert or participation with them from: continuing to harass, surveil, intimidate, defame, slander, or retaliate against Plaintiff; directing, encouraging, or acquiescing in the harassment, surveillance, intimidation, defamation, slander, or retaliation of Plaintiff by any third party; and interfering with Plaintiff's exercise of his constitutional rights. Such injunctive relief is necessary to prevent the continuation of ongoing constitutional violations that threaten to cause Plaintiff irreparable harm. See 42 U.S.C. § 1983.

**283.** Plaintiff is additionally entitled to injunctive relief in the form of a court order directing the NYPD to accept, document, and investigate all future complaints filed by Plaintiff, and to provide Plaintiff with copies of all complaint reports prepared in response to his future complaints. This specific injunctive relief is necessary to prevent the continuation of the NYPD's unconstitutional policy and practice of refusing Plaintiff's complaints, and to ensure that Plaintiff is afforded equal access to police services going forward.

**284.** Plaintiff is entitled to an award of reasonable attorney's fees and costs as a prevailing party in this civil rights action pursuant to 42 U.S.C. § 1988. Plaintiff, filing pro se at the time of this Complaint, reserves all rights to seek attorney's fees and costs pursuant to § 1988 if and when counsel is retained and Plaintiff ultimately prevails in this action. The award of attorney's fees is necessary to ensure that

persons with meritorious civil rights claims are able to retain competent counsel and to pursue those claims effectively.

**285.** Plaintiff is additionally entitled to pre-judgment and post-judgment interest on all monetary awards at the maximum rate allowable by law, to all costs of this litigation, and to all other relief that this Court may deem just, proper, and equitable in light of the severity, duration, and systemic nature of the constitutional violations directed against Plaintiff Raj Thakur over the course of approximately ten years.

---

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Raj Thakur respectfully prays that this Court enter judgment in his favor and against all Defendants, jointly and severally, and grant Plaintiff the following relief:

**286.** A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants' conduct, as described throughout this Complaint, violated Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983, 1985, and 1986, and that Defendants' conduct was and is unconstitutional and unlawful;

**287.** A permanent injunction pursuant to 42 U.S.C. § 1983 and the equitable jurisdiction of this Court, restraining and enjoining Defendants, their officers, agents, employees, servants, successors, assigns, and all persons acting in concert or participation with them, from further harassing, surveilling, intimidating,

defaming, slandering, retaliating against, or otherwise violating the constitutional rights of Plaintiff Raj Thakur;

**288.** A court order directing the New York City Police Department and all of its officers, agents, and employees to accept, document, and investigate all complaints filed by Plaintiff Raj Thakur in the future, and to provide Plaintiff with copies of all complaint reports and investigation records prepared in response to his complaints, consistent with Plaintiff's constitutional right to equal protection of the laws and to non-discriminatory police services;

**289.** A restraining order pursuant to the equitable jurisdiction of this Court, restraining and enjoining all named and Doe Private Individual Defendants from contacting, approaching, harassing, following, surveilling, tailgating, impeding, blocking, intercepting, defaming, slandering, or interacting with Plaintiff Raj Thakur in any manner whatsoever, directly or through any agent, surrogate, or instrumentality;

**290.** A future protection order pursuant to the equitable jurisdiction of this Court, directed against the City of New York, its agencies, officers, employees, and agents, and against all identified wrongdoers, prohibiting any further targeting, surveillance, harassment, intimidation, retaliation, or civil rights violations directed against Plaintiff Raj Thakur, and establishing mechanisms for the prompt enforcement of this Court's protective orders;

**291.** An order directing institutional reform of the New York City Police Department's policies, training, and practices relating to the receipt, documentation, and investigation of civilian harassment complaints and civil rights

violation reports, to ensure that all future complainants receive equal, non-discriminatory police services in conformity with the requirements of the United States Constitution and applicable federal law;

**292.** Compensatory damages against all Defendants, jointly and severally, for all physical, psychological, professional, and economic harms suffered by Plaintiff as a result of the constitutional violations, civil rights violations, and state law torts described in this Complaint, in an amount to be determined at trial but sufficient to fully and fairly compensate Plaintiff for all harms suffered;

**293.** Compensatory damages for physical injuries, pain and suffering, emotional distress, anxiety, post-traumatic stress, hypervigilance, and disruption of daily activities, caused by the ten-year campaign of targeting, harassment, surveillance, and civil rights violations, and by the May 13, 2025 motor vehicle collision, in an amount to be determined at trial;

**294.** Compensatory damages for loss of professional reputation, lost wages and earning capacity, lost business opportunities, and economic harm caused by Defendants' defamation, slander, and deliberate interference with Plaintiff's professional activities as a licensed real estate broker, youth counselor and nurse aide/DSP, in an amount to be determined at trial;

**295.** Special and consequential damages for all out-of-pocket expenses and foreseeable future harms arising from Defendants' unconstitutional conduct, in amounts to be established at trial;

**296.** Punitive damages against each individual defendant, including each John/Jane Doe NYPD Officer, each John/Jane Doe Private Individual Defendant, the Driver, and the Police Commissioner in his/her individual capacity, in such amount as the jury may award, to punish each defendant for his or her unconstitutional, malicious, and recklessly indifferent conduct and to deter future violations of a similar character. See Smith v. Wade, 461 U.S. 30 (1983);

**297.** Pre-judgment interest on all compensatory damage awards from the earliest date allowed by law through the date of judgment, at the maximum rate permitted by applicable law;

**298.** Post-judgment interest on all amounts awarded in the judgment of this Court, at the maximum rate permitted by applicable law, from the date of entry of judgment through the date of full satisfaction of judgment;

**299.** Reasonable attorney's fees and costs of this action pursuant to 42 U.S.C. § 1988, as a prevailing plaintiff in this civil rights action, to be determined by this Court at the conclusion of the litigation;

**300.** Any and all other relief—legal, equitable, declaratory, and injunctive—that this Court deems just, proper, appropriate, and equitable in light of the nature, severity, duration, and systemic character of the constitutional violations, civil rights violations, and state law torts described in this Complaint, and to ensure that full justice is done to Plaintiff Raj Thakur and that Defendants are held fully accountable for their conduct.

---

## JURY DEMAND

**301.** Plaintiff Raj Thakur hereby demands a trial by jury on all issues so triable in this action pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, which provides that a party may demand a jury trial by serving the other parties with a written demand and filing the demand with the court. Plaintiff hereby makes such written demand, incorporated in this Complaint filed with this Court. Plaintiff demands a jury trial on all claims asserted in this Complaint for which a jury trial is available under the United States Constitution and applicable federal law.

**302.** This demand for trial by jury is additionally made pursuant to the Seventh Amendment to the United States Constitution, which preserves the right to jury trial in suits at common law where the value in controversy exceeds twenty dollars. This civil rights action for compensatory and punitive damages is a suit at common law within the meaning of the Seventh Amendment, and Plaintiff's right to a jury trial on all damages issues is constitutionally protected. Plaintiff expressly demands that all factual disputes in this action be resolved by a jury of his peers, and that no factual issue properly triable to a jury be decided by this Court without the consent of Plaintiff.

---

## CERTIFICATION AND SIGNATURE

**303.** Plaintiff Raj Thakur hereby certifies, pursuant to Rule 11(b) of the Federal Rules of Civil Procedure and to the best of his knowledge, information, and belief, formed after a reasonable inquiry under the circumstances, that: (1) this Complaint

is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the legal contentions asserted herein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the factual contentions made in this Complaint have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions, if any, are warranted on the evidence or are reasonably based on a lack of information and belief. Plaintiff reserves the right to amend this Complaint upon the completion of discovery, as additional facts and the identities of Doe Defendants are established, pursuant to Rule 15 of the Federal Rules of Civil Procedure. Plaintiff respectfully submits this Complaint to the United States District Court for the Eastern District of New York in the good faith belief that the foregoing allegations are true and that the relief sought herein is proper and warranted by the law and facts of this case.

**Dated: Monday the August 10, 2026**

Queens, New York.

Respectfully submitted,

**RAJ K. THAKUR**

Plaintiff Pro Se

147-19 147 Street, Apt. E7,

Flushing, NY 11367.

Email: RAJOFUSA@HOTMAIL.COM

Cell: (917)602-1715

……………………………………………………………….END……………………………………………………

Revised 02.13.2025; Effective 02.17.2025

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS** RAJ K. THAKUR
79-19 147 ST, Apt. E7, FLUSHING, NY 11367

**(b)** County of Residence of First Listed Plaintiff QUEENS
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

**DEFENDANTS** CITY OF NEW YORK
c/o Corporation Counsel, NYC Law Dept, 100 Church Street, NY NY 10007

County of Residence of First Listed Defendant MANHATTAN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☒ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. §§ 1983, 1985, 1986.

Brief description of cause: Civil Rights Violations, Retaliation, Conspiracy, State Law claims [illegible]

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ $10,000,000

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE ____ DOCKET NUMBER ____

DATE SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____